IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **Jane Doe I,** *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 3:16-0199 |
| | ) | JURY DEMAND |
| v. | ) | |
| | ) | Judge Trauger |
| **The University of Tennessee,** *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FOR IMPROPER VENUE, OR, IN THE ALTERNATIVE, TO TRANSFER VENUE[1]

Defendants, by and through counsel, move the Court to dismiss pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406(a) for improper venue under 28 U.S.C. § 1391, or, in the alternative, to transfer venue to the Eastern District of Tennessee pursuant to 28 U.S.C. § 1404. As to Defendant the University of Tennessee ("the University"), the Middle District of Tennessee is an improper venue under 28 U.S.C. § 1391(d) because the University would not be subject to general personal jurisdiction in the Middle District if this district were its own state. As to the Director of Student Conduct & Community Standards in his official capacity, ("the SCC Director), venue is improper because he is not domiciled in the Middle District, under 28 U.S.C. § 1391. In the alternative, the case should be transferred to the Eastern District of Tennessee under 28 U.S.C. § 1404 for the convenience of parties and witnesses, in the interest of justice.

---

[1] While it is unclear whether a response to a motion for a temporary restraining order is a "responsive pleading" contemplated by Rule 12(h)(1)(B)(ii) of the Federal Rules of Civil Procedure, Defendants file the instant motion out of an abundance of caution to ensure that their venue objections are preserved. Given the somewhat harried posture of the case thus far, Defendants have had to turn this Motion and its supporting memorandum of law around rather quickly. As a result, if necessary, they may amend this motion to add affidavits (as Plaintiffs amended their Motion for a Temporary Restraining Order) or file them with a reply and Defendants respectfully request the Court's forbearance.

## ARGUMENT

This case should be dismissed because venue is improper as to both Defendants. In the alternative, the case should be transferred to the Eastern District of Tennessee.

### I. THE CASE SHOULD BE DISMISSED BECAUSE VENUE IS IMPROPER AS TO BOTH DEFENDANTS.

Venue statutes are intended to "protect[ ] a defendant from the inconvenience of having to defend an action in a trial court that is either remote from the defendant's residence or from the place where the acts underlying the controversy occurred." VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1576 (Fed. Cir. 1990) (citation omitted). To accomplish this, the venue statutes limit a plaintiff's choice of forum to only certain courts from among all those that might otherwise acquire personal jurisdiction over the defendant. Id. When a case is filed in a district or division where venue is not proper, the court must dismiss the case or transfer it to a district or division in which it could have been brought. 28 U.S.C. § 1406(a).

The term "personal jurisdiction" refers to a court's authority to impose a binding judgment against a party. It comes in two types: general and specific. Where a court has general jurisdiction over a party, the court may impose a binding judgment against that party in regard to claims that have no connection to the party's activities within the forum. A court that has only specific jurisdiction over a party may only impose a binding judgment in regard to claims that arise out of or relate to that party's activities within the forum. See, e.g., Burger King v. Rudzewicz, 471 U.S. 471-72 (1985).

The plaintiff bears the burden of showing that venue is proper. See Pilates, Inc. v. Pilates Inst., Inc., 891 F. Supp. 175, 183 (S.D.N.Y. 1995); Interlease Aviation Inv'rs II (Aloha) L.L.C. v. Vanguard Airlines, Inc., 262 F. Supp. 2d 898, 913 (N.D. Ill. 2003); Audi AG & Volkswagen of Am., Inc. v. Izumi, 204 F. Supp. 2d 1014, 1017 (E.D. Mich. 2002); Wai v. Rainbow Holdings,

315 F. Supp. 2d 1261, 1268 (S.D.Fla. 2004) (citing cases). In assessing whether venue is proper, the court must accept all well-founded allegations in the complaint as true, unless contradicted by affidavits from the defendant. Id. The court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff. Id.

Plaintiffs assert general federal venue pursuant to 28 U.S.C. § 1391(b)(1),[2] apparently conceding (correctly) that a substantial part of the events or omissions giving rise to the claim did not arise in the Middle District of Tennessee (thus, § 1391(b)(1) is inapplicable), and that there is a district in which the action could otherwise be brought—namely, the Eastern District of Tennessee—(thus, § 1391(b)(3) is inapplicable). The question, therefore, turns upon whether the Defendants "reside" in the Middle District of Tennessee for purposes of venue.

A. **The University does not reside in the Middle District under 28 U.S.C. § 1391(d).**

It is important to note that personal jurisdiction for venue purposes is not the same as personal jurisdiction generally. That is because of 28 U.S.C. § 1391(d), which states,

> **d) Residency of corporations in States with multiple districts.**--For purposes of venue under this chapter, in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

---

[2] The Complaint incorrectly cites to 28 U.S.C. § 1391 (c)(2), which defines residency, but does not provide venue. (Compl., D.E. 1, at ¶ 18.) It is clear from the Complaint, however, that Plaintiffs intended to rely upon 28 U.S.C. § 1391(b)(1). (Id.) They do not, and cannot, make a claim for specific jurisdiction (and venue) based upon the allegations in the Complaint.

3

Given that Tennessee is a state with multiple districts, the relevant inquiry is whether the University, a legislatively-created corporation,³ has sufficient contacts to subject it to personal jurisdiction in the Middle District of Tennessee, if the Middle District were its own state and the University was a non-resident. See Clare MacMillan-Bell v. Kang, No. CV 15-5411, 2015 WL 7294903, at *3 (E.D. Pa. Nov. 19, 2015); Horizon Mktg. v. Kingdom Int'l Ltd., 244 F. Supp. 2d 131, 138 (E.D.N.Y. 2003). As a result, in conducting its venue analysis, the Court must conduct a somewhat convoluted process, asking whether the University has continuous and systemic contacts in this forum sufficient to subject them to personal jurisdiction in this district as if it were its own state, while ignoring the possibility that the University may have state-wide personal jurisdiction as a whole. See KM Enterprises, Inc. v. Global Traffic Technologies, Inc., 725 F.3d 718, 733 (7th Cir. 2013) ("[b]y conceding personal jurisdiction as to the state [of Illinois], the LLC did not automatically waive its objections to venue in the Southern District.").

As to whether the University had sufficient contacts in the "state" of the Middle District of Tennessee, the relatively recently-decided Supreme Court case of Daimler AG v. Bauman, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014), controls. In that decision, the Supreme Court clarified what it meant by "continuous and systemic" contacts in Goodyear and International Shoe, holding that

> the inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic," it is whether that corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State."

---

³ "The University of Tennessee was incorporated by the state of Tennessee in 1807, under the name of 'Trustees of East Tennessee College.' Scott's Revision, p. 1047. The name of the corporation was changed to 'the University of Tennessee' by an act of March 10, 11, 1879." Univ. of Tennessee v. People's Bank, 157 Tenn. 87, 6 S.W.2d 328, 329 (1928).

4

Daimler AG, 134 S. Ct. at 761 (analyzing Int'l Shoe Co. v. Washington, 326 U.S. 310, 311 (1945) and Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2853, 180 L. Ed. 2d 796 (2011)). The Daimler Court further stated,

> With respect to a corporation, the place of incorporation and principal place of business are "paradig[m] ... bases for general jurisdiction." Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable. These bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims.

Id. at 760 (internal citations omitted).

In accordance with Daimler, to find that the University would be subject to general jurisdiction in this district if it were treated as a separate state – and therefore that the University should be deemed to reside in this district for purposes of 28 U.S.C. §1391(d) – Plaintiffs must show that, when viewed in light of all of its activities, the University's various activities within the Middle District of Tennessee are so substantial and of such a nature as to render it at home here. Plaintiffs have failed to do so.

In an attempt to fend off an objection to venue, Plaintiffs allege that the University operates some satellite campuses in the Middle District and cite a link to a website demonstrating that the University's Board of Trustees occasionally holds some meetings of its subcommittees in Nashville. (Compl., D.E. 1, at ¶ 18.) As to the Nashville Satellite campuses, there are fewer than 200 students planned for Nashville Medical and Pharmacological campuses "after expansion"[4] Furthermore, Plaintiffs give no explanation as to why the Board's periodic meetings in Nashville (or Martin or Chattanooga for that matter) are so continuous and systematic as to

---

[4] See "Our Campuses" webpage at https://www.uthsc.edu/aboututhsc/ourcampuses.php (last visited February 15, 2016).

5

render it at home in the Middle District.[5] Plaintiffs do not do so, because they cannot do so. It is clear that the University is at home in the Eastern District, in Knoxville, and that the Middle District is not the "paradigm."

  A. <u>The SCC Director is not domiciled in the Middle District; thus, venue is improper.</u>

  Venue is equally improper as to the SCC Director. The SCC Director's residency for purposes of venue, is analyzed pursuant to 28 U.S.C. §1391(c)(1), which states that a natural person "shall be deemed to reside in the judicial district in which the person is domiciled." Because Plaintiffs have sued the SCC director in his official capacity, his domicile is the place where he performs his official duties. "'Where a public official is a party to an action in his official capacity, he resides in the judicial district where he maintains his official residence, that is, where he performs his official duties.'" <u>O'Neill v. Battisti</u>, 472 F.2d 789, 791 (6th Cir. 1972) (quoting 1 Moore's Federal Practice 1487-88).

  The SCC Director performs his official duties in Knoxville, in the Eastern District of Tennessee. The Complaint is notably silent as to why venue is appropriate against the SCC Director. As noted *supra*, the plaintiff bears the burden of showing that venue is proper. <u>See Pilates, Inc. v. Pilates Inst., Inc.</u>, 891 F. Supp. 175, 183 (S.D.N.Y. 1995). Plaintiff cannot do so.

  B. <u>Plaintiffs' claims regarding a lack of fairness cannot be evaluated at this stage.</u>

  Finally, Plaintiffs assert that they "cannot receive a fair and impartial trial by jury in accordance with the Seventh Amendment to the U.S. Constitution in any other judicial district in which venue would be proper." (Compl., D.E. 1, at ¶ 18.) In analyzing a motion to dismiss for improper venue, however, the Court must focus exclusively on the relationship of defendants to

---

[5] As a matter of clarification, the website references meetings of committees of the Board. <u>See</u> http://trustees.tennessee.edu/ (last visited February 16, 2016).

6

the forum and the litigation. See Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984). Such concerns are more properly addressed by the Eastern District of Tennessee.

## II. ALTERNATIVELY, THE COURT SHOULD TRANSFER THE CASE TO THE EASTERN DISTRICT OF TENNESSEE.

If the Court finds that venue is proper in the Middle District of Tennessee, the case should nonetheless be transferred to the Eastern District of Tennessee under 28 U.S.C. § 1404.[6] That statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

When considering a motion to transfer under § 1404(a), "a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" Moore v. Rohm & Haas Co., 446 F.3d 643, 647 (6th Cir. 2006) (quoting Moses v. Bus. Card Exp., Inc., 929 F.2d 1131, 1137 (6th Cir. 1991)). This Court has stated that the factors that should be considered include "(1) the convenience of the parties and witnesses; (2) the accessibility of evidence; (3) the availability of process to make reluctant witnesses testify; (4) the costs of obtaining willing witnesses; (5) the practical problems of trying the case most expeditiously and inexpensively; and (6) the interests of justice." Anderson v. TOL, Inc., 927 F. Supp. 2d 475, 484 (M.D. Tenn. 2013) (noting that the Sixth Circuit has "suggested" that these are the relevant factors). The defendants bear the burden

---

[6] Defendants also recognize that the Court has the authority to transfer the case even if venue is improper pursuant to 28 U.S.C. § 1406(a).

7

of proving that transfer is warranted pursuant to § 1404. Id. (citing Blane v. Am. Investors Corp., 934 F. Supp. 903, 907 (M.D. Tenn. 1996)).

The first factor—the convenience of parties and the witnesses—weighs in favor of transferring the case. As an initial matter, the Defendants recognize that, generally speaking, the Court will give a plaintiff's choice of forum strong consideration. But when a plaintiff chooses a forum that is not his residence, the Court will give the plaintiff's choice less weight. W.H. by & through M.H. D.R. v. Tennessee Dep't of Educ., No. 3:15-1014, 2016 WL 236996 at *3 (M.D. Tenn. Jan. 20, 2016); Ozark Entm't, Inc. v. Wilson, No. 3:09-0195, 2009 WL 4884445 at *2 (M.D. Tenn. Dec. 10, 2009); 15 Wright & Miller, Federal Practice & Procedure § 3848 (4th ed.) ("Wright & Miller") ("If the plaintiff is not a resident of the forum, the plaintiff's forum choice may be entitled to relatively little deference").

A court will also give less weight to a plaintiff's choice of forum when the action "has a limited connection with the forum." Wilson, 2009 WL 4884445 at *2 (citing Allenburg Cotton Co. v. Staple Cotton Cooperative Ass'n, No. 06-2449, 2007 WL 2156352 at *2 (W.D. Tenn. July 25, 2007)); Wright & Miller § 3848 ("The plaintiff's preference may also be given less weight if the plaintiff sued in a district that has no obvious connection to the case").

Given the presence of only one of the parties in the Middle District, the Court should not give strong consideration to the Plaintiffs' choice of forum. In this case, only one of the Plaintiffs resides in the Middle District of Tennessee—Plaintiff III, who resides in Spring Hill, Tennessee.[7] (Compl. ¶ 12.) Three of the Plaintiffs reside within the Eastern District of

---

[7] Unlike the other Tennessee Plaintiffs, the Complaint does not specify the county in which Plaintiff III resides. It merely recites that she resides in Spring Hill, Tennessee. Compl. ¶ 12. Spring Hill is a city situated within both Williamson County and Maury County. See http://www.springhilltn.org/index.aspx?nid=104 (last visited Feb. 15, 2016). Both of these counties are within the Middle District, but they are in different divisions: Maury County is in the Middle District's Columbia Division, and Williamson County is in the Middle District's Nashville Division. Thus, it could be that Plaintiff III lives within the Columbia Division of the Middle District.

8

Tennessee—Plaintiffs I, II, and VI, who reside in Knox County, Hamilton County, and Knox County, respectively. (Id. ¶¶ 11, 16.[8]) The other two Plaintiffs reside outside the state of Tennessee—Plaintiffs IV and V, who reside in Orlando, Florida, and Rhineback, New York, respectively. (Id. ¶¶ 13-14.) Both of the Defendants are located in the Eastern District of Tennessee. In short, only one of the parties is located within the Middle District of Tennessee (but it is not clear that the Plaintiff resides within the Nashville Division of the Middle District). The other five plaintiffs and both of the defendants are located outside the Middle District of Tennessee. This situation is analogous to when a plaintiff does not reside in his chosen forum. Thus, the Court should afford the Plaintiff's choice of forum less weight than it otherwise would.

The Court should also afford less weight to the Plaintiffs' chosen forum because the case has no obvious connection to the Middle District of Tennessee. The Plaintiffs are all former students of the University of Tennessee at Knoxville. Moreover, all—or virtually all—of the events alleged in the Complaint, allegedly happened within the Eastern District of Tennessee. Thus, the Court should afford the Plaintiffs' choice less weight.

Given the strong connection of the case to Knoxville, many of the witnesses will be located there. Of course, many of these witnesses will be officers or employees of the University of Tennessee. Courts have stated that a party's employees' convenience "is of lesser relevance" than that of nonparty witnesses because the employees "can be compelled to testify on behalf of their employer." Smith v. Kyphon, 578 F. Supp. 2d 954, 963 (M.D. Tenn. 2008); Anderson, 927 F. Supp. 2d at 484. However, in this case, presumably a large number of employees will be asked to testify, and their convenience should not be cast aside lightly.

---

[8] Plaintiff I's residence is noted above paragraph 11 of the Complaint, but it is not in a numbered paragraph.

9

As for nonparty witnesses, the Defendants have identified some potential witnesses located in Knoxville. The Defendants identified some of these witnesses after receiving the investigative reports from the alleged sexual assaults of the Plaintiffs.[9] At least some current and former students are likely to testify in this matter, and many of them will also be located in Knoxville. There will likely be other nonparty witnesses identified as the case progresses, but no matter which nonparty witnesses testify, the witnesses will likely be located in Knoxville.[10]

The second factor—the accessibility of evidence—also weighs in favor of transferring the case. Even though the importance of this factor has diminished in the modern era of e-discovery and other technological advances, Anderson, 927 F. Supp. 2d at 484, the factor must be considered. Because Knoxville is where these events allegedly occurred, Knoxville will be the location of much of the relevant evidence in this case. Accessibility to the evidence will be easiest in Knoxville.

The third factor—the availability of process to make reluctant witnesses testify—weighs in favor of transferring the case. Rule 45 of the Federal Rules of Civil Procedure limits the ability of the parties to obtain a witness's testimony at a trial, hearing, or deposition. Rule 45 provides:

> A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
>
> **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
>
> **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person

---

[9] Given the sensitive nature of this proceeding, the Defendants have not attached the investigative reports to this Motion, but the Defendants are willing to provide them to the Court for *in camera* review.

[10] Another relevant consideration for nonparty witnesses is the availability of process to make the witnesses testify (the third factor), which is discussed below.

> **(i)** is a party or a party's officer; or
>
> **(ii)** is commanded to attend a trial and would not incur substantial expense.

Fed. R. Civ. P. 45(c)(1). Under this provision of Rule 45, we may not be able to secure the trial testimony of nonparty witnesses who reside in, work in, or transact business in Knoxville. Because Knoxville is not within 100 miles of Nashville, subpart (A) would not help the parties in securing a nonparty witness's trial testimony. Under subpart (B), the parties might be able to secure the trial testimony of nonparty witnesses inside the state if they are "commanded to a trial and would not incur substantial expense."[11] It seems likely that at least some nonparty witnesses—most obviously the students—would incur substantial expense if they were required to attend the trial in the Middle District. But if the case were transferred to Knoxville, presumably the 100-mile radius would be sufficient to compel the trial testimony of many of the nonparty witnesses located in the Eastern District of Tennessee.

In short, it is questionable whether the parties could secure the trial testimony of some of the nonparty witnesses located in Knoxville unless the case is transferred to the Eastern District. This weighs in favor of transferring the case. See Wright & Miller § 3851 ("Many cases show that the courts compare the relative abilities of the forum and the proposed transferee district to secure the live testimony of important witnesses at trial. Thus, the fact that important nonparty witnesses may be within the subpoena power of one court but not the other is a significant issue.").

The fourth factor—the costs of obtaining willing witnesses—is neutral at this stage of the proceeding. Presumably this factor refers to the tendency of some courts to consider the costs

---

[11] The other ground for obtaining testimony is if the witness is a party or a party's officer. This would not help to secure the trial testimony of nonparty witnesses.

11

that willing witnesses will bear if they testify.  Id.  At this point, the Defendants can predict at least some of the witnesses they will call to testify, but they are not sure the costs that the witnesses will bear if they do testify.  However, given the strong connection to Knoxville, it seems likely that many willing witnesses could incur significant costs in testifying.

The fifth factor—the practical problems of trying the case most expeditiously and inexpensively—weighs in favor of transferring the case.  Given the location of the alleged acts, the location of the evidence, the location of the defendants, the location of three plaintiffs in the Eastern District, and the probable location of nonparty witnesses, the case would be most expeditiously and inexpensively tried in Knoxville.

The sixth factor—the interests of justice—weighs in favor of transferring the case. Though this factor can be "amorphous and somewhat subjective," at least some courts give it great weight and can find that the interests of justice require transfer even if the other factors weigh in favor of not transferring the case.  Wright & Miller § 3854.

One consideration is the relative dockets of the two courts.  Id.  And while a court should not transfer a case "simply to serve the court's own convenience," "[a] prompt trial" is a relevant consideration for the parties and witnesses.  Fannin v. Jones, 229 F.2d 368, 369-70 (6th Cir. 1956).  The Administrative Office of the Courts considers the delayed appointment of a judicial vacancy in the Middle District a "judicial emergency." See Mary Troyan, *Tennessee Judicial Vacancies Caught in Senate Logjam*, The Tennessean, September 30, 2015.[12]

Another relevant consideration is the administration of justice, which includes the ability of a local jury to decide the controversy:

---

12       Available at http://www.tennessean.com/story/news/politics/2015/09/30/tennessee-judicial-vacancies-caught-senate-logjam/73108784/ (last visited February 15, 2016).

12

> [J]udicial opinions have noted that the administration of justice is better served when the action is litigated in the forum that encompasses the locus of operative facts and thus may have a particular interest in the proper resolution of the dispute. Many courts handling transfer motions therefore consider the desirability of resolving the controversy in such a locale. An additional reason for litigating in the forum that encompasses the locus of operative facts is the local interest in having local controversies resolved at home, especially in environmental cases or other matters involving land or matters of local policy.

Wright & Miller § 3854. This weighs heavily in favor of transferring the case to Knoxville. The Plaintiffs claim that they could not receive a fair trial in Knoxville, but do not support this conclusory allegation with any evidence (See Compl. ¶ 18.)

After considering all of these factors, the Court should transfer this case to the Eastern District of Tennessee: all (or virtually all) of the acts alleged in the Complaint occurred in Knoxville; both defendants are located in Knoxville; two of the plaintiffs reside in Knoxville; only one plaintiff lives in the Middle District of Tennessee; many witnesses are located in Knoxville; the parties may be unable to compel nonparty witnesses to testify at trial if the case stays in the Middle District; and a local jury in the Eastern District should decide the controversy because the events happened there. Of course, Plaintiffs chose to litigate in the Middle District, and courts usually give great weight to a plaintiff's choice of forum—but because only one of the Plaintiffs resides in the Middle District, and because the operative facts occurred in Knoxville, the Court should give the Plaintiffs' choice less weight than it otherwise would.

Wright & Miller state that "transfer is appropriate" when a court is "convince[d] . . . that another proper venue is the 'center of gravity' for the dispute." § 3841; see also Oakley v. Remy Int'l, Inc., No. 2:09-0107, 2010 WL 503125 at *5 (M.D. Tenn. Feb. 5, 2010) ("A 'fundamental principle' guiding the Court's analysis of a motion to transfer is that 'litigation should proceed "in that place where the case finds its center of gravity."'" (quoting North American Demolition

13

Case 3:16-cv-00199 Document 15 Filed 02/16/16 Page 13 of 14 PageID #: 543

Co. v. FMC Corp., 2005 WL 1126747, at *3 (N.D. Ohio 2005))). There can be no doubt that this case finds its center of gravity in Knoxville. It should be transferred to the Eastern District.

Respectfully submitted,

**NEAL & HARWELL, PLC**

By: s/Kendra E. Samson
William T. Ramsey, #009245
Kendra E. Samson, # 018976
Robert A. Peal, #025629

150 Fourth Avenue North, Suite 2000
Nashville, TN 37219
(615) 244-1713 – Telephone
(615) 726-0573 – Fax
bramsey@nealharwell.com
ksamson@nealharwell.com
rpeal@nealharwell.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 16th day of February, 2016, this document was electronically filed with the Court and a copy was served via the method(s) indicated below, on the following counsel of record:

| | |
|---|---|
| ☐ Hand | David Randolph Smith |
| ☐ Mail | Dominick R. Smith |
| ☐ Fax | W. Lyon Chadwick |
| ☐ Fed. Ex. | Christopher W. Smith |
| ☐ E-Mail | **David Randolph Smith & Associates** |
| ☒ EFS | 1913 21st Avenue South |
| | Nashville, TN 37212 |

s/Kendra E. Samson

14