**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **Jane Doe I,** *et al.,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | **No. 3:16-0199** |
| | ) | **JURY DEMAND** |
| **v.** | ) | |
| | ) | **Judge Trauger** |
| **The University of Tennessee,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
SECOND AMENDED MOTION FOR TEMPORARY RESTRAINING ORDER**

Defendants, by and through counsel and pursuant to Fed. R. Civ. P. 65, respond to and oppose Plaintiffs' Second Amended Motion for Temporary Restraining Order as follows:[1]

## INTRODUCTION

Tomorrow morning, The University of Tennessee will provide John Doe II with a due process hearing[2] through which he will be contesting the University's attempt to indefinitely suspend him from school and permanently mark his disciplinary record with a finding that he sexually assaulted Plaintiff Jane Doe III. After agreeing to the hearing and its procedure for over ten months, Plaintiff Jane Doe III and her counsel now seek a last-minute Order from this Court to stop the UAPA hearing so that she and her counsel can participate on their own terms and

---

[1]     By filing this Response to a motion filed only three days after the filing of the Complaint and amended just two days before the hearing at issue and then refiled the day before the hearing, Defendants do not waive any defense set forth in Fed. R. Civ. P. 12(b) to be brought by motion at the appropriate time.  Defendants filed a motion to dismiss based on improper venue or to transfer venue immediately prior to filing this Response.

[2]     The hearing will be conducted in accordance with The University of Tennessee's rules for conducting contested case hearings under the Uniform Administrative Procedures Act. See Tennessee Code Annotated § 4-5-101 et seq.; Tenn. Comp. R. & Regs. 1720-1-5. The University will refer to the hearing in this brief as the "UAPA hearing."

dictate the type of hearing the University will use to discipline John Doe II (i.e., participate without the attorney for John Doe II having an opportunity to cross-examine Plaintiff Jane Doe III).

Plaintiff Jane Doe III's motion is ironic for at least three reasons. First, she complains about delays of the process mandated by Tennessee state law, and, as a remedy, seeks to delay the hearing for years. Second, Plaintiff Jane Doe III seeks to stop the University from doing the very thing she and her co-plaintiffs allege the University has failed to do – discipline a student who is alleged to have perpetrated a sexual assault. Third, Plaintiffs' allege that the UAPA process unfairly favors student-athletes, but John Doe II is not and has never been a student-athlete.

## BACKGROUND

Before addressing her legal arguments, the University is compelled to correct Plaintiff Jane Doe III's sensationalized, misleading and incomplete version of the procedural history of the University's investigation and resolution of her sexual assault report. As shown below, the University's investigation of her sexual assault report was thorough, equitable, and reasonably prompt.

The facts below also refute Plaintiff Jane Doe III's suggestion that she would somehow be harmed by tomorrow's UAPA hearing. She and her attorneys not only failed to object to the hearing up until less than a week ago, they cooperated in its scheduling and indicated her intention to appear live, knowing full well that if she testifies, John Doe II's lawyer may cross examine her. Despite John Doe II's attorney's suggestion that she would depose Plaintiff Jane Doe III, no deposition has occurred and Plaintiff Jane Doe III is not under subpoena to testify

2

live at the hearing. She and her attorneys in this matter are well aware that she is under no obligation to attend the hearing or to testify. Moreover, Plaintiff Jane Doe III and her attorneys knew for months that they had a right to intervene in the UAPA hearing and become a party if they wished to do so.

**The University's Investigation of Plaintiff Jane Doe III's Complaint**

The University diligently investigated and pursued the disciplinary charges that are the subject of tomorrow's UAPA hearing. On the afternoon of October 12, 2014, a Sunday, Plaintiff Jane Doe III reported to the University's residential housing staff that she had been sexually assaulted. In response, the University's residential housing staff offered care and support to Plaintiff Jane Doe III and provided her with a copy of the University's "You Are Not Alone" booklet,[3] a written explanation of the University's policies, procedures, and care and support options for victims of sexual assault. The next day, a member of the University's Sexual Assault Response Team contacted Jane Doe III to reiterate her options for the University to investigate the matter and provide her with care and support.

As Plaintiff Jane Doe III concedes in her motion, she initially refused to participate in the University's investigation of her complaint. Nevertheless, the University issued "no contact" directives to Plaintiff Jane Doe III and John Doe II on October 24, 2014.[4] J. Jackson Declaration ¶ 4 (filed herewith). On that same day, James Jackson, Jr., the Director of the Office of Student Conduct and Community Standards, met with John Doe II and explained the "no contact"

---

[3]    Available at http://wellness.utk.edu/wp-content/uploads/2014/07/University-of-Tennessee-You-Are-Not-Alone-Sexual-Assault-Support-Guide.pdf (last visited February 16, 2016).

[4]    "No contact" directives are issued to both parties in cases alleging sexual assault and prohibit contact between the parties. J. Jackson Declaration ¶ 4.

3

directive to him.  Id.  Mr. Jackson emailed Plaintiff Jane Doe III on October 28, 2014 seeking to confirm that she did not want to participate in any investigation.  Id. ¶ 5.  After receiving no response, he sent a follow-up email to her on November 6, 2014.  Id.  Plaintiff Jane Doe III responded on that date and confirmed that she did not wish to participate in Student Conduct's investigation.  Id.

Plaintiff Jane Doe III did not change her mind and inform Student Conduct that she was willing to participate in its investigation until November 25, 2014, which was two days before Thanksgiving.  Id. ¶ 6.  The University's investigators for this matter, Mr. Jackson and Betsy Smith, the Assistant Director of Student Conduct and Community Standards, interviewed Plaintiff Jane Doe III on the very first business day after the Thanksgiving holiday, Monday, December 1, 2014.  Id. ¶ 7.

During interviews with complainants, such as Plaintiff Jane Doe III, it is Mr. Jackson's practice to explain to them the three options available to resolve disciplinary charges against a respondent, such as John Doe II.  Id. ¶ 7.  Those options are to (1) accept responsibility and the penalty; (2) contest the charges through a hearing before the Student Disciplinary Board; and (3) contest the charges through an UAPA hearing.  Id.  Ms. Smith took notes during the interview of Plaintiff Jane Doe III and those notes reflect that Mr. Jackson made that explanation to Plaintiff Jane Doe III.  Id.

After interviewing Plaintiff Jane Doe III, Mr. Jackson and his staff interviewed more than 30 witnesses.  Id. ¶ 8.  They interviewed John Doe II on December 3, 2014.  Id.  Twenty of the thirty additional interviews occurred prior to the end of the final exam period on December 11, 2014.  Id.  When the winter break was over and classes resumed on January 7, 2015, the

4

interviews continued.  Id.  They interviewed the Tennessee State University students who were identified as present, and two of whom were alleged to have assaulted Plaintiff Jane Doe III.  Id. Interviews of those witnesses had to be coordinated with Tennessee State University and occurred on January 26, 2015.  Id.

### John Doe II's Election of an UAPA Hearing

On February 5, 2015, Student Conduct charged John Doe II with violating the University's Code of Conduct.  Id. ¶ 9.  At that time, he was provided with notice of his fundamental rights, including his right to elect a "contested case" hearing under the Uniform Administrative Procedures Act, Tennessee Code Annotated § 4-5-101 et seq.  Id.  John Doe II initially elected a hearing before the student disciplinary board rather than the UAPA hearing. Id.  However, he retained an attorney to represent him shortly after that and his attorney elected an UAPA hearing on John Doe II's behalf on February 25, 2015.  Id.

On March 18, 2015, James Jackson sent a memorandum and report to UT Vice Chancellor for Student Life Dr. Vincent Carilli informing Dr. Carilli about the status of John Doe II's disciplinary case, Student Conduct's disciplinary penalty recommendation, and the timeline of Student Conduct's investigation. Id. ¶ 10.  Attached to the memorandum was Student Conduct's report of its investigation of the allegations made against John Doe II.[5]

---

[5]     The Student Conduct report was prepared by Mr. Jackson and Ms. Smith and provided the details of the investigation, including summaries of the witness interviews.  J. Jackson Declaration at ¶ 10.  Defendants have not included a copy of the report in this filing due to the embarrassing nature of the details of the allegations and the events leading up to the alleged assault.  Defendants also want and need to ensure their full compliance with the Family Educational Rights and Privacy Act of 1974 (FERPA) regarding privacy of student records.  If the Court believes that the report would be helpful to a decision, Defendants will provide it for in camera review.

**Acquiescence of Plaintiff Jane Doe II's Counsel to the UAPA Hearing and to the ALJ**

Given John Doe II's election of an UAPA hearing, on March 18, 2015, Dr. Carilli sent the request to the University's Office of General Counsel for handling. J. Walker Decl. ¶ 4 (filed herewith). The University is represented in John Doe II's UAPA hearing by Associate General Counsel Joshua R. Walker. Id. ¶ 2-3. Mr. Walker does not represent, and has never purported to represent, Jane Doe III or to be her advocate. Id. at ¶ 3. When Mr. Walker learned that Plaintiff Jane Doe III was represented by David Randolph Smith, her counsel in this lawsuit, he contacted Mr. Smith on April 7, 2015 to request permission to speak with Plaintiff Jane Doe III regarding the UAPA hearing. Id. ¶ 5-6.[6] That same day Lyon Chadwick, an attorney in Mr. Smith's office and counsel of record in this case, responded and granted Mr. Walker permission to speak with Plaintiff Jane Doe III so long as her attorneys were copied on any written communication. Id. ¶ 7. Mr. Walker complied with that request. Id. Mr. Walker's first communications with Plaintiff Jane Doe III were emails on April 8, 2015 and April 10, 2015 informing her that the matter would proceed under the UAPA. Id. ¶ 8.

On April 17, 2015, the administrative law judge ("ALJ") assigned to preside over the UAPA hearing sent an email to Messrs. Walker and Smith and others informing them that she is friends with John Doe II's attorney so that any request for recusal on that basis could be made. Id. ¶ 9. Mr. Chadwick initially suggested to Mr. Walker that the University seek recusal of the ALJ. Id. ¶ 10.

---

[6] The emails exchanged between Mr. Walker, Plaintiff Jane Doe III and her attorneys are attached to Mr. Walker's declaration as collective exhibits A and B. The emails are in chronological order and are divided into two documents so as to comply with the Court's limitation on the size of documents filed electronically. The emails have also been redacted to remove all indentifying information of Plaintiff Jane Doe III and John Doe II.

Mr. Walker informed Mr. Chadwick on April 22, 2015 that the University had decided not to seek the ALJ's recusal, but that Plaintiff Jane Doe III could intervene in the UAPA hearing to become a party and move to recuse the ALJ if they wanted to do so. Id. ¶ 11. Mr. Walker emailed Plaintiff Jane Doe III separately the same day to inform her of that decision. Id. ¶ 12. Mr. Chadwick emailed Plaintiff Jane Doe III and her father on that same day explaining the University's decision and agreeing that decision made "sense from a tactical standpoint." Id. ¶ 15.[7] He also acknowledged that they could request recusal themselves, but that would delay the proceedings. Id. Plaintiff Jane Doe III responded both to her attorneys and to Mr. Walker that she agreed and was fine proceeding with the assigned ALJ. Id. ¶¶ 14-15.

While delay was one of the concerns in declining to request recusal of the ALJ, Mr. Walker also did not believe it would be advantageous. The assigned ALJ is a former prosecutor and the most experienced ALJ available. Id. ¶ 13. He also did not consider the fact that she was friends with John Doe II's attorney to be a factor that would affect the outcome of the case, since friendships between lawyers and judges are common. Id.

Mr. Walker also explained to Plaintiff Jane Doe III in his April 22, 2015 email that he was going to file a summary judgment motion to try to resolve the contested case so that she would not have to testify and John Doe II's lawyer would not take her deposition. Id. ¶ 12. That motion was unsuccessful and Mr. Walker emailed Plaintiff Jane Doe III on June 16, 2015 (with a copy to Mr. Smith) to let her know. Id. ¶ 18. Mr. Walker also inquired as to what level Plaintiff Jane Doe III wished to participate in the UAPA hearing. Id.

_____

[7]     Mr. Chadwick's email was forwarded to Mr. Walker when Plaintiff Jane Doe III's father forwarded it to him (copying Messrs. Chadwick and Smith).

7

On June 18, 2015, Mr. Chadwick emailed Mr. Walker to inquire about the status of the UAPA hearing, and Mr. Walker forwarded him the previous email to Plaintiff Jane Doe III on which he had copied Mr. Smith. Id. ¶ 19. Mr. Chadwick responded by inquiring as to the basis for the denial of the University's motion for summary judgment. Id. ¶ 20. Mr. Walker explained that John Doe II's attorney had pressed for Plaintiff Jane Doe III's deposition and the ALJ would not consider the motion for summary judgment without her deposition. Id. ¶¶ 20-21.

On August 10, 2015, Mr. Walker emailed Plaintiff Jane Doe III and her attorney to inform them that the hearing had been set for October 6-7, 2015. Id. ¶ 22. Mr. Walker also asked her whether she wanted to participate. Id. John Doe II's attorney had mentioned issuing a subpoena for Plaintiff Jane Doe III's deposition and Mr. Walker explained that process to her. He also suggested that if she were deposed, he could also record her testimony to present at the hearing so that she would not need to attend. Id. Neither Plaintiff Jane Doe III nor her attorneys objected to John Doe II's lawyer deposing her or otherwise questioning her. Id.

On September 22, 2015, Mr. Walker emailed Plaintiff Jane Doe III and her attorney to inform them that the hearing had been continued to November 12-13, 2015. Id. ¶ 24. Mr. Walker again asked her if she wanted to participate and reiterated that John Doe II's attorney might depose her. Id. Again, neither Plaintiff Jane Doe III nor her attorneys objected in any way to a deposition or other questioning. Id.

On September 24, 2015, Plaintiff Jane Doe III emailed Mr. Walker that she had a conflict with the rescheduled hearing date. Id. ¶ 25. Mr. Walker responded on September 28, 2015 (copying her attorney) and asked her again whether she wanted to participate, saying that he would attempt to reschedule it if she wanted to participate. Id. ¶ 26.

8

Neither Plaintiff Jane Doe III nor her attorney responded and Mr. Walker emailed them again on October 15, 2015 to determine whether she wanted him to seek to move the November hearing date.  Id. ¶ 27.  Plaintiff Jane Doe III responded that same day stating that "[a]s of right now I have no objection to presenting myself as a live witness."  Id. ¶ 28.

On October 20, 2015, Mr. Walker emailed Plaintiff Jane Doe III and her attorney to determine whether she was available for a hearing on December 16-18, 2015.  Id. ¶ 30.  Mr. Chadwick responded that day that there was a conflict with those dates.  Id. ¶ 31.  Neither he nor Mr. Smith objected to the hearing or to Plaintiff Jane Doe III's participation in it.  Id.

On October 21, 2015, Mr. Walker emailed Mr. Chadwick, copying Plaintiff Jane Doe III and Mr. Smith, proposing hearing dates of February 17-19, 2016 or the week of February 22, 2016.  Id. ¶ 32.  Mr. Chadwick responded that day and said that all of those proposed dates were available.  Id. ¶ 33.  Mr. Chadwick still did not object to the hearing or Plaintiff Jane Doe III's participation.  Id.

On January 29, 2016, Mr. Walker emailed Mr. Chadwick and Plaintiff Jane Doe III to let them know that the hearing had been set for February 17-19, 2016 and that he would forward the order of continuance upon receipt.  Id. ¶ 34.  Mr. Walker forwarded the order to them on February 8, 2016 and asked whether Plaintiff Jane Doe III was going to attend the hearing so that he could plan his order of witnesses.  Id. ¶ 35.

It is important to note at this point that from Mr. Walker's first communications with Plaintiff Jane Doe III or her attorneys on April 7, 2015 through his January 29, 2016 email giving them the final hearing date, he communicated regularly with them regarding the hearing, its potential dates, the potential for John Doe II's attorney to depose or question Plaintiff Jane

9

Doe III, and the fact that Plaintiff Jane Doe III did not have to attend the hearing. At no point during those communications did Plaintiff Jane Doe III or any of her attorneys ever object to the hearing at all. Id. ¶ 37. Indeed, Mr. Chadwick was actively involved in scheduling the hearing date of February 17, 2016. Id.

On February 8, 2016, only nine days before the hearing, which was scheduled on a date that Mr. Chadwick said was available more than three months earlier, Mr. Smith sent Mr. Walker an email stating his position that the UAPA hearing are preempted by federal law and arguing that the hearing should not proceed. Id. ¶ 36. Mr. Walker responded on February 10, 2016, explaining that the University is required by law to provide UAPA hearings when they are elected and that his position did not have merit. Id. ¶ 39. Mr. Walker also explained that he had multiple witnesses under subpoena and reminded Mr. Smith that Plaintiff Jane Doe III was not required to attend the hearing. Id.

Mr. Smith responded by repeating his position regarding preemption and stating that he was unwilling to allow Plaintiff Jane Doe III to be cross examined in a hearing. Id. ¶ 41. He asked that the University postpone the hearing pending the resolution of this lawsuit and said he would seek a temporary restraining order if the University did not agree. Id.

Mr. Walker informed Mr. Smith that the University was not able to postpone the hearing until the resolution of this lawsuit. Id. ¶ 42. He also reminded them again that while Plaintiff Jane Doe III was welcome to attend the hearing, she was not required to do so. Id.

Mr. Smith then requested in a telephone call that Mr. Walker limit any cross examination questions of Plaintiff Jane Doe III to written questions submitted to the ALJ to be asked by the ALJ if relevant and appropriate. Id. ¶ 45. Since a UAPA hearing is required by Tennessee law,

cross examination is a procedure granted by the UAPA and the University's rules governing contested cases under the UAPA, and nothing in federal law prohibits cross-examination in sexual assault cases, Mr. Walker was obviously unable to require that the ALJ or John Doe II agree to such a procedure. Nevertheless, Mr. Walker asked John Doe II's attorney whether she would agree to Mr. Smith's proposal, but she declined. Id. ¶ 46. Mr. Walker informed Mr. Smith that she would not agree to that proposal by email on February 11, 2016. Id. To-date, Mr. Smith still has not moved to intervene in the UAPA hearing or petition the ALJ to modify the manner in which cross-examination will be conducted.

## ARGUMENT

Plaintiff Jane Doe III has not met her burden of showing that this Court should issue a temporary restraining order ("TRO") blocking the administrative disciplinary proceeding brought against John Doe II. As a threshold issue, Plaintiff Jane Doe III failed to submit any evidence beyond cursory affidavits regarding emails and the naked allegations[8] from the (unverified) Complaint. She requested no evidentiary hearing. In addition, as explained in the contemporaneously filed motion to dismiss for lack of venue, or in the alternative to transfer venue, this matter is not properly before the Court.

Nonetheless, should the Court examine the merits of Plaintiff Jane Doe III's motion, in determining whether to issue a TRO this Court considers four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial

---

[8]     The University, obviously, has not yet had the opportunity to respond to the allegations in the Complaint. To put it mildly, the University disputes many of the allegations upon which Plaintiff bases the instant motion.

11

harm to others; and (4) whether the public interest would be served by the issuance of the injunction." Hunter v. Hamilton Cty. Bd. of Elections, 635 F.3d 219, 233 (6th Cir. 2011) (quoting Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 542 (6th Cir. 2007)).[9] These factors must be balanced, but they are "'not prerequisites that must be satisfied.'" National Viatical, Inc. v. Universal Settlements Int'l, Inc., 716 F.3d 952, 956 (6th Cir. 2013) (quoting Am. Imaging Servs., Inc. v. Eagle–Picher Indus., Inc., 963 F.2d 855, 859 (6th Cir.1992)).

**A.    Plaintiff Jane Doe III cannot meet her burden of demonstrating a strong likelihood of success on the merits.**

The first factor in determining whether to issue a TRO—whether Plaintiff Jane Doe III has a strong likelihood of success on the merits—is critical.  Indeed, a failure to show a likelihood of success on the merits is usually fatal to the motion.  Gonzales v. National Bd. of Med. Examiners, 225 F.3d 620, 625 (6th Cir. 2000).  A plaintiff's inability to show a strong likelihood of success on the merits can show that the plaintiff will not suffer irreparable harm. Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Court, 769 F.3d 447, 455 (6th Cir. 2014) ("Platt has not shown irreparable harm, largely because he has not demonstrated a strong likelihood of success on the merits."); McNeilly v. Land, 684 F.3d 611, 621 (6th Cir. 2012) ("Because McNeilly does not have a likelihood of success on the merits, . . . his argument that he is irreparably harmed by the deprivation of his First Amendment rights also fails."). Plaintiff's motion for TRO must fail because she cannot meet her burden of demonstrating that the University's procedures for conducting contested case hearings under the UAPA, which are

---

[9]    While Hunter was a preliminary injunction case, the same factors are examined in determining whether to issue a temporary restraining order.  See Moore's Federal Practice § 65.36[1] (3rd ed. 2015).

mandated by Tennessee law, are preempted by Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681, *et seq.* or the Campus SaVE Act.[10]

### 1. Policies of the Tennessee Board of Regents do not apply to the University of Tennessee.

Plaintiff Jane Doe III's reliance upon any policy of the Tennessee Board of Regents is misplaced. The University of Tennessee is not governed by the Tennessee Board of Regents ("TBR"). The University is governed by its Board of Trustees. See T.C.A., Title 49, Chapter 9. The TBR governs the State University and Community College System, including such universities as the University of Memphis, Middle Tennessee State University and Tennessee State University. See T.C.A. §§ 49-8-101, 49-8-203.

Additionally, to the extent Plaintiff Jane Doe III's motion requests that this Court prohibit UAPA hearings in all sexual assault hearings, no such request could or should be read to apply to the TBR. The TBR is not a party to this lawsuit and it has no connection with the governance of the University. It is a separate entity that governs completely different institutions under Tennessee law. Indeed, Plaintiff Jane Doe III has made no specific allegations as to the TBR's application of the UAPA in sexual assault cases other than an allegation that the TBR does not use it (which is not even true).

In fact, Plaintiff Jane Doe III is simply incorrect that the TBR does not utilize the UAPA with regard to institutions it governs. The TBR's policies do provide for a UAPA contested case

---

[10]     Section 304 of the Violence Against Women Reauthorization Act (signed on March 7, 2013) was called the Campus Sexual Violence Elimination Act ("Campus SaVE Act"). The Campus SaVE Act amended the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act ("Clery Act"), 20 U.S.C. § 1092(f), in multiple ways, including the "prompt and equitable" requirements.

13

hearing if a student is subject to suspension or expulsion for disciplinary reasons. That policy

provides as follows:

> Contested Case Procedure: All cases which may result in: (a) suspension or
> expulsion of a student from the institution for disciplinary reasons, or (b)
> revocation of registration of a student organization, are subject to the contested
> case provisions of the Uniform Administrative Procedures Act (UAPA), T.C.A. §
> 4-5-301 et seq., and shall be processed in accord with the Uniform Contested
> Case procedures adopted by the Board of Regents unless the student or
> organization, after receiving written notice, waives those procedures and elects to
> have the case disposed of in accord with institutional procedures or waives all
> right to contest the case under any procedure. These procedures shall be described
> in the institution's policy.

See General Policy on Student Conduct & Disciplinary Sanctions: 3:02:00:01at VI.B.[11]

### 2. The University is required to offer students the right to contest disciplinary charges pursuant to an UAPA Hearing.

The University of Tennessee is a state "agency" for purposes of the Uniform

Administrative Procedures Act ("UAPA"). See Tenn. Code Ann. §§ 4-5-101(2), (12); 49-9-110;

49-9-209(e)(1). As such, the University is required to conduct student disciplinary hearings in

accordance with the contested case provisions of the UAPA. Tenn. Code Ann. §§ 4-5-102(3); 4-

5-301 et seq. The University has promulgated administrative rules pursuant to which it conducts

student disciplinary hearings. Tenn. Comp. R. & Regs. 1720-1-5. The University's policy on

sexual misconduct notifies students about the UAPA in multiple places and requires the

administrative judge/hearing officer in an UAPA case to modify the University's UAPA rules

when required to comply with federal law, including, without limitation, Title IX and the Clery

Act. See D.E. 4-2 at 7, 30, 35-36, 53.

---

[11]     The TBR's policy is available at https://policies.tbr.edu/policies/general-policy-student-conduct-disciplinary-sanctions#Disciplinary-Procedures (last visited Feb. 15, 2016).

14

The University's rules allow persons to petition to intervene in the student disciplinary hearing. Tenn. Comp. R. & Regs. 1720-1-5 (9). Plaintiff declined to petition to intervene in John Doe II's hearing despite being notified on multiple occasions that she has the right to do so and her attorney acknowledging that right.

### 3. The UAPA requires the university to offer students the right to cross-examine witnesses.

The UAPA requires the University to grant John Doe II the right to cross-examine witnesses. See Tenn. Code Ann. § 4-5-312 (b) ("To the extent necessary for full disclosure of all relevant facts and issues, the administrative judge or hearing officer shall afford to all parties the opportunity to . . . conduct cross-examination.") In accordance with the UAPA, the University's rules for conducting student disciplinary hearings under the UAPA provide that "[e]very party shall have the right to cross-examine witnesses." Tenn. Comp. R. & Regs. 1720-1-5 (6)(d). Thus, even if, as Plaintiff Jane Doe III suggests, cross-examination is an optional element of a constitutional student due process hearing, the Tennessee General Assembly has determined that cross-examination is a mandatory element of a student due process hearing.

### 4. The UAPA is not preempted by federal law.

State laws that conflict with federal laws are preempted under the Supremacy Clause of the United States Constitution in three circumstances. See, e.g., English v. General Elec. Co., 496 U.S. 72, 78-79 (1990). Express preemption occurs when Congress makes its intent known through explicit statutory language. Id. Field preemption occurs when state law "regulates conduct in a field that Congress intended the Federal Government to occupy exclusively." Id. at 79. The third kind of preemption, conflict preemption, occurs when a state law "actually

15

conflicts with federal law" and "it is impossible for a private party to comply with both state and federal requirements." Id.

Plaintiff Jane Doe III cannot claim that either express preemption or field preemption applies in this case. She appears to be claiming that conflict preemption applies, but provides no support for the proposition that the UAPA actually conflicts with Title IX or the Campus SaVE Act and that it is impossible for the University to comply with both laws. Her argument that it conflicts with the requirement in the Clery Act, 20 U.S.C. § 1092(f),[12] that the University provide "prompt and equitable" resolution of complaints is without merit. First, because it is not impossible to comply with both the state law UAPA requirements and also federal law, there can be no conflict preemption. English, 496 U.S. at 79. If Congress had intended to put deadlines on resolutions of complaints or to ban administrative hearings similar to which Tennessee and a number of other states use, it could have done so. Second, Plaintiffs' would have the Court read the word "equitable" out of the statute. Part of the University's responsibility is to be fair to both the complainant and the respondent and not rush to judgment, at the risk of being wrong, in order to be fast. See Section A.5, below.

Plaintiff Jane Doe III certainly cannot claim that UAPA hearings are preempted as to sexual assault cases in general, even though she asks this Court to restrain the University from using UAPA procedures as required by state law for all sexual assault cases, not just the one regarding her alleged assault. There is absolutely no proof before this Court regarding any other UAPA cases charging sexual misconduct other than this case.

---

[12]    As stated in footnote 10, Plaintiff incorrectly refers to 20 U.S.C. § 1092(f) as the "Campus SaVE Act."

16

With regard to this specific case, the University has put before the Court the proof as to the timeline and the reasons for the timing in this case. Plaintiff Jane Doe III's suggestion that the University was required to complete its investigation within 60 days of the alleged assault is false. Nothing in Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629 (1999), requires such a time period. Additionally, the Department of Education Office for Civil Rights ("OCR") guidance is exactly that – guidance. It does not have the force of law Plaintiffs attempt to attribute to it. Indeed, the 2011 Dear Colleague letter issued by OCR specifically states that it "does not add requirements to applicable law." See Dear Colleague letter (Apr. 4, 2011) at 1 n.1.[13] The OCR fully recognizes that the steps required in an investigation will vary depending on a variety of factors, id. at 4-5, and notes that the 60-day guideline applies to "typical investigations." The investigation of Plaintiff Jane Doe III's complaint was not typical because: (1) she refused to participate in the investigation for weeks; (2) more than three weeks of the University's investigation was interrupted by the University's winter break, when most students are not on campus; and (3) the University had to interview an extraordinarily high number of witnesses, 30, due to Plaintiff Jane Doe III's degree of alcohol intoxication and her inability to describe what happened to her.

Moreover, Plaintiffs have provided absolutely no legal authority for the proposition that anything in the Dear Colleague Letter is binding law. The letter itself disclaims any intent to add any legal requirements to applicable law, stating that "[t]his letter does not add requirements to applicable law, but provides information and examples to inform recipients about how OCR

---

[13]     Available at http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.html (last visited Feb. 14, 2016).

17

evaluates whether covered entities are complying with their legal obligations." <u>See</u> Dear Colleague Letter at 1 n.1. The Assistant Secretary of Education explained the purpose of such letters in recent testimony before the U.S. Senate, stating that the purpose is to "restate[ ] the regulation in plainer language, summarize[ ] requirements, suggest[ ] ways to comply with the new regulation, and/or offer[ ] best practices," and these guidance letters are not "legally binding." <u>Examining the Use of Agency Regulatory Guidance:</u> Hearing Before Subcomm. on Regulatory and Federal Management of the S. Comm. on Homeland Security and Governmental Affairs, 114th Cong. (Sept. 23, 2015) (statement of Amy McIntosh, Principal Deputy Assistant Secretary, U.S. Dep't of Educ.), available at <u>http://www.hsgac.senate.gov/hearings/examining-the-use-of-agency-regulatory-guidance</u> (last visited February 15, 2016).

Plaintiff Jane Doe III's attorney's attempt to obtain the University's agreement to postpone this hearing until after resolution of this lawsuit belies any claim that she believes the UAPA process is too slow. If she truly believes the process is too slow and that the length of time is to her disadvantage, she would not be seeking to delay it for what could amount to years while this litigation proceeds.

Plaintiff Jane Doe III's claims that federal law preempts the UAPA's provisions regarding cross examination are not accurate. First, the Clery Act is silent on the issue of cross examination. 20 U.S.C. § 1092(f). Even though the OCR's Title IX guidance documents do not have the force of law, even they indicate that cross examination is permissible so long as the respondent (John Doe II in this case) is not allowed to personally or directly question the complainant. <u>See</u> OCR Questions and Answers on Title IX and Sexual Violence at 31 (Question

18

F-6).[14]  In this case, John Doe II is represented by counsel and any cross-examination would be conducted by his attorney.  John Doe II is not being permitted to personally or directly question Plaintiff Jane Doe III if she chooses to attend the hearing or chooses to testify. Moreover, Plaintiff Jane Doe III is entitled to bring her attorney with her to the hearing if she believes that is necessary to protect her interests.

> **5.      Plaintiff Jane Doe III ignores binding Supreme Court precedent when she argues, essentially, that the University policies provide "too much" due process to students facing disciplinary action.**

Plaintiff Jane Doe III further has no probability of success on the merits because she is asking this Court to determine that the University, by following the guidance of the Supreme Court and this Circuit in addition to following the requirements of state law, provides too much due process to student disciplinary proceedings.

It is well established that the Fourteenth Amendment Due Process Clause is implicated by higher education disciplinary decisions.  See Goss v. Lopez, 419 U.S. 565, 574 (1975) ("[T]he State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause."); Flaim v. Med. Coll. of Ohio, 418 F.3d 629, 633 (6th Cir. 2005) ("In this Circuit we have held that the Due Process Clause is implicated by higher education disciplinary decisions."); Jaksa v. Regents of Univ. of Michigan, 597 F. Supp. 1245, 1247 (E.D. Mich. 1984) aff'd, 787 F.2d 590

---

[14]      Available at http://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf (last visited February 15, 2016).

19

(6th Cir. 1986) ("plaintiff's suspension from the University [of Michigan] involves a sufficient 'liberty' interest to entitle him to the guarantees of the fourteenth amendment.').

In Plaintiff Jane Doe III's Amended Motion for Temporary Restraining Order and Memorandum of Law in Support of Motion, she expends considerable energy citing a series of cases where courts determined that the due process provided students was sufficient. (Second Am. Mot., D.E. 11, at 20 n.30).  Those cases, however, unlike the case at bar, arose from challenges by students who had been disciplined, not from alleged victims bringing accusations against the student. See Boykins v. Fairfield Bd. of Ed., 492 F.2d 697, 702 (5th Cir. 1974) (case brought by expelled high school students); Winnick v. Manning, 460 F.2d 545, 550 (2d Cir. 1972) (case brought by suspended university students); Dixon v. Alabama State Bd. of Ed., 294 F.2d 150 (5th Cir. 1961) (case brought by college students expelled for misconduct); Dillon v. Pulaski Cty. Special Sch. Dist., 468 F. Supp. 54, 56 (E.D. Ark. 1978) aff'd, 594 F.2d 699 (8th Cir. 1979) (case brought by expelled of high school student); Jaksa v. Regents of Univ. of Michigan, 597 F. Supp. 1245, 1247 (E.D. Mich. 1984) aff'd, 787 F.2d 590 (6th Cir. 1986) (case brought by university student suspended for cheating on exam).

While Plaintiff Jane Doe III correctly points out that cases differ as to exactly how much process is due,[15] the undersigned attorney could locate no case in which a Court determined that an institution of higher learning was providing *too much* process to protect the rights of a student

---

[15]    At least one case that Plaintiff Jane Doe III cites infers that cross-examination of witnesses may be constitutionally required in cases where credibility determinations are paramount (such as Plaintiff Jane Doe III's). See Winnick v. Manning, 460 F.2d 545, 550 (2d Cir. 1972) ("[I]f this case had resolved itself into a problem of credibility, cross-examination of witnesses might have been essential to a fair hearing.  This was not a case, however, where the decision maker had to choose to believe either the accused or his accuser.") (internal citations omitted).

facing discipline. More important to the instant motion, Plaintiff Jane Doe III fails to cite any case for such a proposition. Indeed, it is difficult to conceive of any court making such a ruling; yet, that is exactly what she is asking this Court to do in the instant case.

In fact, the Office for Civil Rights acknowledges the importance of the due process right of accused students, that Title IX does not override such a right, and that State law may trump such rights:

> The Constitution . . . guarantees due process to students in public and State-supported schools who are accused of certain types of infractions. The rights established under Title IX must be interpreted consistent with any federally guaranteed due process rights involved in a complaint proceeding. Furthermore, the Family Educational Rights and Privacy Act (FERPA) does not override federally protected due process rights of persons accused of sexual harassment . . . . In both public and private schools, additional or separate rights may be created for employees or students by State law, institutional regulations and policies, such as faculty or student handbooks, and collective bargaining agreements. Schools should be aware of these rights and their legal responsibilities to individuals accused of harassment.

See U.S. Department of Education Office for Civil Rights, Revised Sexual Harassment Guidance: Harassment of Student by School Employees, Other Students, or Third Parties, at § X (Jan 19, 2001).[16]

In fact, the Ninth Circuit upheld a district court's opinion in a case with facts similar to the case at bar, and where the affirmed district court's opinion noted that "plaintiff's argument ignores a fundamental legal precept that the University cannot elevate the rights of the alleged victim above the rights of the alleged assailant." Doe v. Univ. of the Pac., No. CIV. S-09-764, 2010 WL 5135360, at *13 (E.D. Cal. Dec. 8, 2010) aff'd sub nom. Doe v. Univ. of Pac., 467 F.

---

[16]      Available at http://www2.ed.gov/about/offices/list/ocr/docs/shguide.html (last visited February 15, 2016).

21

App'x 685 (9th Cir. 2012). In that case, the plaintiff argued, *inter alia*, that it was a violation of Title IX for the University and Board to allow cross-examination type questions of her related to "the specific sexual conduct at issue, including whether she consented to the conduct and how she expressed that consent or lack thereof." Id. at *13. The District Court disagreed, granting the University's motion for summary judgment. Id. at *18. The Ninth Circuit affirmed. Doe v. Univ. of Pac., 467 F. App'x 685, 689 (9th Cir. 2012).

Here, the State of Tennessee has legislatively enacted a means to protect the Constitutionally-guaranteed due process rights of those students facing disciplinary action. Plaintiff Jane Doe III fails to cite any case in which a Court found an accused was granted too much due process. Cf. In re Rochkes, No. 98-74154, 2000 WL 33963087, at *2 (Bankr. C.D. Ill. Nov. 27, 2000) ("Clearly, the Court must err on the side of granting too much due process over granting too little."). Here, as in Doe v. University of the Pacific, Plaintiff Jane Doe III's argument ignores the accused's fundamental right to due process.

**B.** **Plaintiff Jane Doe III has not shown irreparable injury.**

As an initial matter, Plaintiff Jane Doe III has not shown irreparable injury because she has shown no likelihood of success on the merits of this motion. See, e.g., McNeilly v. Land, 684 F.3d 611, 621 (6th Cir. 2012). However, even without that failure, she still has not shown any injury to her, let alone irreparable injury. The UAPA hearing on Wednesday is to determine whether John Doe II violated the University's Standards of Conduct and decides nothing as to Plaintiff Jane Doe III. The University has not asked Plaintiff Jane Doe III to do anything with regard to this hearing. The University has not subpoenaed her to testify. See Declaration J. Walker ¶ 44. Plaintiff Jane Doe III does not claim in her motion that John Doe II's attorney has

subpoenaed her, and Mr. Walker is not aware of any such subpoena being issued or returned as served.  Id.  Plaintiff Jane Doe III has provided no proof that anybody is making her travel or do anything.  Thus, even assuming arguendo that Plaintiff Jane Doe III's conclusory statement that she "will likely face further harassment" is correct, she has the option not to attend the hearing. Although the decision whether to attend the hearing may be a difficult decision, it is not a decision that violates federal law.

### C.        There is no harm to Plaintiff Jane Doe III that outweighs harm to others.

In addition to the lack of harm to Plaintiff Jane Doe III from the University proceeding with the UAPA hearing, the harm to others weighs in favor of denying the requested TRO.  First, nothing about the hearing under the UAPA violates or conflicts with any federal law. Additionally, with respect to the hearing set for Wednesday, February 17, 2016, the University has multiple witnesses subpoenaed to testify.  See Declaration J. Walker ¶ 39.  The University clearly has an interest in remedying a charged violation of its Standards of Conduct and in seeking suspension of a student who is charged with violating those Standards of Conduct. Additionally, John Doe II has a property right in his education which the University is trying to take away from him.  See supra at 19-22.  He has a right to the UAPA hearing under state law upon request and an interest in resolving this issue rather than being held in limbo for the apparently indefinite time sought by Plaintiff Jane Doe III.

### D.        No public interest favors granting a temporary restraining order.

There is no public interest that favors granting a TRO in this case.  Plaintiff Jane Doe III's arguments on this factor are nothing more than a restatement of her claims regarding this particular hearing.  To the contrary, if it is determined that John Doe II violated the University's

Standards of Conduct by engaging in sexual misconduct, then the University and the public have an unquestionable interest in removing him from campus by suspending him.

Plaintiff Jane Doe III's claim that she and other complainants have no right to invoke the UAPA process themselves, while true, is irrelevant. Students have a right to request the UAPA process when the University is seeking to suspend or expel them, *i.e.*, to deprive them of constitutionally protected property rights. The University is not seeking to suspend or expel Plaintiff Jane Doe III or complainants in general. The fact that complainants in sexual assault cases do not have a right to invoke the UAPA process does not violate any federal law and Plaintiff Jane Doe III has made no showing that it does.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Second Amended Motion for Temporary Restraining Order.

Respectfully submitted,

**NEAL & HARWELL, PLC**

By:      s/Kendra E. Samson
William T. Ramsey, #009245
Kendra E. Samson, # 018976
Robert A. Peal, #025629

150 Fourth Avenue North, Suite 2000
Nashville, TN 37219
(615) 244-1713 – Telephone
(615) 726-0573 – Fax
bramsey@nealharwell.com
ksamson@nealharwell.com
rpeal@nealharwell.com

*Counsel for Defendants*

24

## CERTIFICATE OF SERVICE

I hereby certify that on this the 16th day of February, 2016, this document was electronically filed with the Court and a copy was served via the method(s) indicated below, on the following counsel of record:

☐ Hand
☐ Mail
☐ Fax
☐ Fed. Ex.
☐ E-Mail
☒ EFS

David Randolph Smith
Dominick R. Smith
W. Lyon Chadwick
Christopher W. Smith
**David Randolph Smith & Associates**
1913 21st Avenue South
Nashville, TN  37212


s/Kendra E. Samson