**UNITED STATES DISTICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

**JANE DOE I, JANE DOE II, JANE DOE III,**   )
**JANE DOE IV, JANE DOE V, JANE DOE VI,**   )
**JANE DOE VII, and JANE DOE VIII,**   )
  )
    **Plaintiffs,**   )
  )
**v.**   )     **Case No. 3:16-cv-199**
  )     **Judge Aleta A. Trauger**
**THE UNIVERSITY OF TENNESSEE,**   )
  )
    **Defendant.**   )

**<u>MEMORANDUM</u>**

Pending before the court is a Motion to Dismiss (Docket No. 31) filed by the defendant, the University of Tennessee ("UT"), seeking to: 1) dismiss the action for lack of venue under Rule (12)(b)(3) or, alternatively, transfer venue to the United States District Court for the Eastern District of Tennessee at Knoxville under 28 U.S.C. § 1404; 2) dismiss the action for failure to state a claim under Rule 12(b)(6); and 3) strike paragraph 26 and other portions of the First Amended Complaint.  With respect to the part of the motion concerning venue, UT incorporates by reference its earlier Motion to Dismiss for Improper Venue, or, in the Alternative, To Transfer Venue (Docket No. 14), to which the plaintiffs have filed a Response (Docket No. 23), UT has filed a Reply (Docket No. 30), and the plaintiffs have filed a Sur-Reply (Docket No. 34).  With respect to the request to strike Paragraph 26 of the First Amended Complaint, UT incorporates by reference its earlier Motion to Strike Paragraph 21 of the Complaint (Docket No. 20), to which the plaintiffs have filed a Response (Docket No. 25).  For the reasons discussed herein, the Motion to Dismiss (Docket No. 31) will be denied in part: the court will not dismiss this action for lack of venue or transfer venue to the United States District Court for the Eastern District of

1

Tennessee, nor will the court strike Paragraph 26 of the First Amended Complaint. The court will, however, reserve judgment on the remaining parts of the motion (seeking to dismiss for failure to state a claim and to strike additional portions of the First Amended Complaint).[1]

## BACKGROUND

This case arises from allegations that the plaintiffs, while students at UT Knoxville, were victims of sexual assault, aggravated assault, false imprisonment, and harassment by UT Knoxville football and basketball players and suffered retaliation by the perpetrators and other students for reporting these events and assisting with investigations.[2] These events are alleged to have primarily taken place on the UT Knoxville campus or in nearby locations affiliated with the UT Knoxville Athletics Department. The plaintiffs bring claims against UT under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.* ("Title IX"), based on two separate theories of liability: 1) UT's alleged official policy of deliberate indifference to sexual assault created a hostile sexual environment for female students and was a causal factor leading to the assaults on the plaintiffs; and 2) UT's alleged deliberate indifference, and unreasonable and inadequate response, to the assaults on the plaintiffs caused the plaintiffs to suffer additional harassment and other adverse consequences. The detailed allegations include, among other things, UT's alleged condoning of underage drinking and disrespect towards women, failure to train athletes and employees about sexual assaults and investigations, disciplinary procedures (or

_____

[1] UT's argument that this action should be dismissed under Rule 12(b)(6) – and, relatedly, that portions of the First Amended Complaint aside from paragraph 26 should be stricken – have been raised for the first time in the pending Motion to Dismiss (Docket No. 31), to which the plaintiffs have filed a Response in opposition (Docket No. 35).

[2] Some of these underlying incidents have been adjudicated, or are in the process of being investigated or adjudicated, through UT administrative procedures or through criminal prosecutions.

lack thereof) biased in favor of athletes, administrative and investigative procedures that favor the rights of the accused over the rights of victims, and discrimination against victims of sexual assault, all of which are in violation of Title IX. The plaintiffs seek compensatory damages and declaratory and injunctive relief that will force UT to change its practices.

**MOTION TO TRANSFER OR DISMISS FOR LACK OF VENUE**

I.      **Facts and Procedural History**

On February 9, 2016, the plaintiffs initiated this action with the filing of the original Complaint. (Docket No. 1.) On February 16, 2016, UT filed a Motion to Dismiss for Improper Venue, or, in the Alternative to Transfer Venue (Docket No. 14), along with a Memorandum in Support (Docket No. 15). On February 24, 2016, the plaintiffs filed the First Amended Complaint against UT (Docket No. 22), which is the current operative pleading and which technically rendered moot the prior motion. The parties have had an opportunity, however, through subsequent rounds of briefing discussed in greater detail below, to fully brief the venue issues raised in that motion, including to address any facts related to venue that are contained in the First Amended Complaint. Thus, the court considers these briefs when determining the venue issues raised in the currently pending motion (Docket No. 31).

The First Amended Complaint alleges that venue is proper in the United States District Court for the Middle District of Tennessee at Nashville "pursuant to 28 U.S.C. § 1391(b)(1) and § 1391(c)(2) because, *inter alia*, UT, as an arm of the State of Tennessee, resides in the Nashville Division in the Middle District, is subject to this Court's personal jurisdiction, and Plaintiffs cannot receive a fair and impartial trial by jury in accordance with the Seventh Amendment to the U.S. Constitution in any other judicial district in which venue would be proper." (Docket No. 22 ¶ 22.) The First Amended Complaint also states that plaintiffs Jane Doe III, Jane Doe VII,

and Jane Doe VIII reside within the Middle District of Tennessee; plaintiffs Jane Doe I, Jane Doe II, and Jane Doe VI reside within the Eastern District of Tennessee; and plaintiffs Jane Doe IV and Jane Doe V reside outside of Tennessee.  (Docket No. 22 ¶¶ 12-19.)

Attached to the First Amended Complaint are three declarations: 1) the February 22, 2016 Declaration of W. Timothy Rogers (Docket No. 22-1), a former Vice Chancellor for Student Life at UT, who allegedly resigned from UT in March of 2013 "in protest over the violation of Title IX and the UT administration's and athletic department's deliberate indifference to the clear and present danger of sexual assaults by UT athletes" (*Id.* ¶ 8) after making "repeated efforts to bring concerns over serious ongoing problems involving sexual assaults by football and basketball players and with the University's response as it relates to sexual assault cases to the attention of school administrators" (Docket No. 22 ¶ 38); 2) the February 19, 2016 Declaration of Jenny Wright (Docket No. 22-2), a former Director of Student Judicial Affairs at UT, who allegedly "voiced concerns relating to a pattern and practice of active interference by the Athletic Dept." with disciplinary investigations and proceedings (Docket No. 22 ¶ 51); and 3) the February 22, 2016 Declaration of Drae Bowles (Docket No. 22-4), a current student at UT Chattanooga, who was identified in the First Amended Complaint as a former student of UT Knoxville who allegedly assisted one of the plaintiffs following her assault and consequently suffered retaliation from fellow football players that was condoned by a UT coach (Docket No. 22 ¶¶ 190-208).  In these declarations, each of the prospective witnesses states that he or she would be willing to travel to Nashville to participate in this case and that doing so would impose no burden, inconvenience, or substantial expense, despite the fact that they reside

in the Eastern District of Tennessee.[3]

On March 1, 2016, the plaintiffs filed a Response in Opposition to UT's Motion to Dismiss for Improper Venue, or, in the Alternative to Transfer Venue (Docket No. 23), along with the March 1, 2016 Declaration of David Randolph Smith, one of the attorneys for the plaintiffs (Docket No. 24 (the "Smith Declaration")), and a number of attachments thereto. According to the Smith Declaration, the following prospective non-party witnesses for the plaintiffs reside in the Middle District of Tennessee: an unnamed UT football player, who can provide evidence regarding the alleged sexual assault of a female UT student (not one of the plaintiffs) by a UT football player in 2015; the healthcare provider to Jane Doe VII; the parents of Jane Doe III, Jane Doe VII, and Jane Doe VIII, who can provide evidence as to damages; unidentified friends of Jane Doe III, Jane Doe VII, and Jane Doe VIII, who can also provide evidence as to damages; unnamed employees of David Lipscomb University, who can provide information about damages to Jane Doe VII, namely increased tuition costs associated with her transfer from UT to Lipscomb; two unnamed students of Tennessee State University, who allegedly participated – along with a UT student – in the sexual assault of Jane Doe III (though Mr. Smith concedes that "it is not known whether they are still in school in Nashville" (Docket No. 24 ¶ 38.f)); and former UT football player Antwan Stewart, who can provide evidence about a prior incident of sexual assault at UT (not involving the plaintiffs). (*Id*. ¶ 38.) The Smith Declaration further confirms that Jenny Wright and W. Timothy Rogers consent to attend trial in Nashville, as does another unnamed non-party witness who resides in the Eastern District of

---

[3] Drae Bowles states that he attends school in the Eastern District of Tennessee but that his permanent home address is in Jackson, Tennessee (in the Western District) and that it would be more convenient for him to attend trial in Nashville than in Knoxville.

Tennessee and was allegedly sexually assaulted by a UT football player in 2015 and who is "willing to provide testimony as a 'Jane Doe' witness." (*Id*. ¶ 40.)  Finally, the Smith Declaration lists a number of prospective non-party witnesses who do not reside in either the Middle District of Tennessee or the Eastern District of Tennessee. (*Id*. ¶ 39.)

Attached to the Smith Declaration are declarations by each of the plaintiffs, which state as follows:

- The Declaration of Jane Doe I states that, while she currently resides in Knoxville, her permanent residence is in Connecticut, and she does not plan to remain in Knoxville after she graduates from school there this year.[4]  (Docket No. 24-38 ¶¶ 1, 5, 6.)  While she states that she would, then, incur expenses for travel to Tennessee whether this case proceeds in Nashville or is transferred to Knoxville, she avers that she has close family in Nashville with whom she can stay, and she would have not have to pay for lodging here.  (*Id*. ¶ 6.)  She also states that it would be painful and distressing for her to litigate her claims in Knoxville.  (*Id*. ¶ 9.)

- The Declaration of Jane Doe II states that, while she resides within the Eastern District of Tennessee (in Hamilton County) and attends school close to home, she would incur equal expense by having to travel to either Nashville or Knoxville. (Docket No. 24-39 ¶ 7.)  She further states that she currently works part-time and has very little savings.  (*Id*. ¶ 6.)  She declares that the expense of travel would be mitigated if the case were to remain in Nashville, because she has close family here

[4] She is a former UT Knoxville student who is currently enrolled at another school in Knoxville, Tennessee.

and would not need to pay for lodging.  (*Id.* ¶ 7.)  Finally, she states that it would be painful and distressing for her to return to Knoxville to litigate her claims.  (*Id.* ¶ 8.)

• The Declaration of Jane Doe III states that she currently resides with her parents in Williamson County, Tennessee, in the Middle District of Tennessee, she has no personal savings, and that it would be expensive for her to travel to Knoxville and pay for lodging there.  (Docket No. 24-40 ¶¶ 3, 6, 7).  She further states that she does not feel safe in Knoxville and that it would be painful and distressing for her to litigate her claims there.  (*Id.* ¶ 9.)

• The Declaration of Jane Doe IV states that her permanent residence is with her family in Florida, she attends school in Texas, she does not work and has very little personal savings, and it would be expensive for her to travel to Knoxville and pay for lodging there. (Docket No. 24-41 ¶¶ 3, 5, 6, 7.)  While she would also incur expenses travelling to Nashville, she states that there "are more options at less expense for the Nashville airport than the Knoxville airport."  (*Id.* ¶ 7.)   She also states that she does not feel safe in Knoxville and that it would be painful and distressing for her to litigate her claims there.  (*Id.* ¶ 9.)

• The Declaration of Jane Doe V states that her permanent residence is with her family in New York and that she currently attends school in Florida.  (Docket No. 24-42. ¶ 3.)  She currently has no personal savings, and she states that the airfare to fly to Nashville, from either New York or Florida, is significantly less expensive than airfare to Knoxville and also that she has close family in Nashville and would not need to pay for lodging here.  (*Id.* ¶¶ 6, 7.)  She also states that she does not feel

safe in Knoxville and that it would be painful and distressing to litigate her claims there.  (*Id.* ¶¶ 8, 9.)

- The Declaration of Jane Doe VI states that she lives with her family in Knoxville and is currently a full time student at UT.  (Docket No. 24-43 ¶¶ 3, 5.)  While she would incur additional costs for travel if the case remains in Nashville, rather than Knoxville, she states that she works part-time and has sufficient personal savings to pay for the cost of the travel and that she has close family in Nashville and would not have to pay for lodging here, so it would "impose no substantial burden, expense or inconvenience for [her] to travel to Nashville for trial."  (*Id.* ¶¶ 6, 7.)  She also states that, because of the publicity of the case and the fact that she lives in Knoxville and attends UT, she "is concerned that proceeding in Knoxville will increase the likelihood of [her] identity becoming public whereas that is less likely to occur if [her] claims are litigated in Nashville, Tennessee."  (*Id.* ¶ 8.)  Finally, she states her belief that, "if the case is litigated in Nashville, [she is] less likely to encounter harassment related to or resulting from [her] participation in the case in [her] day to day activities."  (*Id.* ¶ 9.)

- The Declaration of Jane Doe VII states that she resides with her family in Williamson County, Tennessee and attends school in Davidson County, Tennessee, both within the Middle District of Tennessee.  (Docket No. 24-44 ¶¶ 3, 5.)   She states that she works part-time and has very little savings and that it would be expensive for her to travel to Knoxville and pay for lodging there.  (*Id.* ¶¶ 5, 6.)  She also states that she does not feel safe in Knoxville and that it would be painful and distressing to litigate her claims there.  (*Id.* ¶¶ 8, 9.)

- The Declaration of Jane Doe VIII states that she resides with her family in Rutherford County, Tennessee, within the Middle District of Tennessee. (Docket No. 24-45 ¶¶ 3, 4.) She states that she does not work and has no personal savings, and that it would be expensive for her to travel to Knoxville and pay for lodging there. (*Id*. ¶¶ 6, 7.) She also states that it would be painful and distressing for her to litigate her claims there. (*Id*. ¶ 8.)

Also attached to the Smith Declaration are copies of messages that, Mr. Smith declares, were posted on, and downloaded from, the Volquest.com message board, maintained by Rivals.com and found at https://tennessee.forums.rivals.com/forums/the-generals-quarters.10/. (Docket Nos. 24-35, 24-37.)[5] This appears to be a message board for discussing UT sports teams, and it also appears, from the exhibits and the website, that messages can only be posted by members of the forum, who are identified only by a screen name, with no other information about their identity or where they are located. The messages that are included in the exhibits to the Smith Declaration are messages that appear to discuss this lawsuit and react to public comments about the case made by people associated with UT and its athletics department. The exhibits include less than 50 comments from 25 members, of which 13 discrete comments by 8 members have been highlighted or circled in red, in whole or in part, by the plaintiffs. (Docket Nos. 24-35, 24-37.)[6]

---

[5] Mr. Smith declares that Exhibit 35 to the Smith Declaration (Docket No. 24-35) contains a true and correct copy of messages downloaded from this forum (Docket No. 24 ¶ 36) but, in what appears to be an oversight, the Smith Declaration does not actually make any reference to Exhibit 37 (Docket No. 24-37). It appears, however, that Exhibit 37 (Docket No. 24-37) contains additional messages downloaded from the same forum.

[6] There are a number of other documents attached to the Smith Declaration, which are not recounted here because they are not relevant to the court's analysis, including documents that

On March 9, 2016, with leave of court, UT filed a Reply in further support of its Motion to Dismiss for Improper Venue, or, in the Alternative to Transfer Venue (Docket No. 30).  UT also filed several declarations in support of its motion, including the March 8, 2016 Declaration of Robert A. Peal, one of the attorneys representing UT (the "Peal Declaration").  (Docket No. 28-7.)  Attached to the Peal Declaration is a list of witnesses who "are likely to be either deposed and/or called as witnesses by [UT] at trial," prepared for the limited purposes of this motion and without the benefit of discovery.  (*Id.* ¶¶ 4, 5.)  This list includes 12 non-party witnesses located in the Eastern District of Tennessee, two in the Middle District of Tennessee, and two located in neither district, all of whom are identified by name, location and subject matter of their prospective testimony.  (*Id.*, Ex. 1 (Witness List as of March 8, 2016), at pp. 1-3.)  The list also includes 28 UT employees located in Knoxville, identified by name and title and the issues about which they may testify.  (*Id.* at pp. 3-7.)  Finally, the list includes 48 unnamed current and former students, who are said to be witnesses to the events at issue in the case, including the alleged assaults on the plaintiffs.  (*Id.* at pp. 7-12.)  Thirty-eight of these students are identified as having either "current addresses" or "mailing addresses" in the Eastern District of Tennessee; of these, 9 also have permanent addresses within the Middle District of Tennessee.  (*Id.*)  Of the remaining 10 students whose current addresses are outside of the Middle District, one has a permanent address that is believed to be within the Eastern District, and the other nine have no addresses within the Eastern or Middle Districts of Tennessee.  (*Id.*)  UT has provided no evidence that any

_____

purport to show the strength of the contact between UT and the Middle District of Tennessee by highlighting information about UT's satellite campuses located here.  For the reasons discussed herein, the court need not rely on this evidence to make a determination regarding venue.

of these witnesses would be unreasonably burdened by having to travel to Nashville, rather than Knoxville, to participate in this trial.[7]

On March 18, 2016, at the court's direction, the plaintiffs filed a Sur-Reply to UT's Motion to Dismiss for Improper Venue, or, in the Alternative to Transfer Venue. (Docket No. 34.) Attached to the plaintiffs' Sur-Reply is an exhibit comparing the witness lists of the two parties, referring back to the Smith Declaration (Docket No. 24) and the Peal Declaration (Docket No. 28-7). (Docket No. 34-3.) Also attached to the Sur-Reply is a printout of the most recent Federal Court Management Statistics (available at http://www.uscourts.gov/statistics-reports/federal-court-management-statistics-june-2015) showing that 1) as of June 30, 2015, the Eastern District of Tennessee had 2,559 pending cases, while the Middle District of Tennessee had 2,122; 2) the median time between filing an action and the action going to trial was 33.4 months in the Eastern District and 31.5 months in the Middle District; and 3) the Eastern District had 103 civil cases (or 6.1% of its civil caseload) that had been pending for over three years, while the Middle District had 87 such cases (or 5.3% of its civil caseload). (Docket No. 34-6.)

On March 9, 2016, UT filed the currently pending Motion to Dismiss the First Amended Complaint and supporting Memorandum, which renews UT's request to dismiss the action, under Rule 12(b)(3), for lack of venue or, alternatively, transfer venue to the United States District Court for the Eastern District of Tennessee at Knoxville, under 28 U.S.C. § 1404, and incorporates by reference UT's prior briefing on this issue. (Docket Nos. 31, 32.)

## II.    **Analysis**

---

[7] On March 9, 2016, in the same filing as the Peal Declaration, UT also filed a number of other declarations discussing UT's satellite campuses in the Middle District. As stated supra n. 6, the court will not reach this evidence in making a determination as to venue and, therefore, does not recount the evidence contained in these declarations.

**A. Motion to Dismiss For Lack of Venue Under Rule 12(b)(3)**

Under 28 U.S.C. § 1391(b)(1), a civil action may be brought in any "judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." The only defendant in this action is UT, and the dispute as to whether venue is proper in the Middle District of Tennessee centers on the parties' disagreement as to whether UT resides in the Middle District of Tennessee for purposes of venue.[8]

The parties devote a great deal of discussion in their briefing to the question of whether UT is a corporation, because residence for purposes of venue is determined differently for corporations than for non-corporate entities. *Compare* 28 U.S.C. § 1391(c)(2) ("For all venue purposes . . . an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . ."), *with* 28 U.S.C. § 1391(d) ("For purposes of venue under this chapter, in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contact would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.").

---

[8] The inquiry in this case is limited to general personal jurisdiction over UT in the Middle District of Tennessee, as the record does not support – nor do the parties argue – any basis for specific jurisdiction, given that the events underlying this action took place almost entirely in Knoxville, outside of the Middle District.

The parties agree that the statutory scheme provides that, while a non-corporate entity resides in any district within a state where it is subject to personal jurisdiction, a corporation's residency in a district can be determined only by analyzing whether the corporation has sufficient contacts with a district that it would be under that district's jurisdiction, were the district its own state. (Docket No. 23, pp. 9-10; Docket No. 30, p. 8.) The plaintiffs argue that venue is proper in the Middle District of Tennessee because UT is a non-corporate Tennessee entity and, therefore, venue is proper anywhere within the state of Tennessee, as is jurisdiction. UT argues that it is a public corporation and, therefore, the court should analyze whether UT has sufficient contacts with the Middle District to subject it to jurisdiction there, if the Middle District were its own separate state. While the court finds in favor of UT on the question of whether it is a corporation,[9] the court finds that this question is ultimately not determinative on the propriety of venue. To the contrary, for the reasons discussed below, venue is proper in the Middle District of Tennessee irrespective of UT's corporate status.

---

[9] The court is not swayed by any of the plaintiffs' arguments that UT is a non-corporate entity. The plaintiffs cite Tenn. Code Ann. § 48-11-201(7) as defining a corporation to be one that is organized for-profit, but the plaintiffs overlook that this definition is within a subchapter of the Tennessee Code discussing *for-profit* corporations, while other sections of the Code address other types of corporations. The plaintiffs also cite *Applewhite v. Memphis State Univ.* for the proposition that a state institution with immunity cannot be a corporation, but this case actually says the opposite and cites UT as an example of a state-controlled entity that is incorporated and has not waived its immunity. 495 S.W.2d 190, 197 (Tenn. 1973). Finally, the plaintiffs cite *Univ. of Tennessee v. United States Fidelity & Guaranty Co.*, 670 F. Supp. 1379, 1383 (E.D. Tenn. 1987), which clearly states that UT was "incorporated." UT, on the other hand, has cited Tennessee authority which shows conclusively that UT is, in fact, a public corporation: Tenn. Op. Atty. Gen. No. 79-68 (Feb. 16, 1979) (citing *University of Tennessee v. People's Bank*, 157 Tenn. 87 (1928)) ("In 1928 the Tennessee Supreme Court noted that the University of Tennessee is a corporation created by the legislature.").

Of greater significance to the venue analysis is the fact that UT concedes in its Reply that it is both a corporation *and an arm of the state of Tennessee.* (Docket No. 30, p. 4.) In fact, the Sixth Circuit has held that "[t]he University of Tennessee, as an arm of the state of Tennessee, is immune to suit in federal court under the doctrine of sovereign immunity." *Boinapally v. Univ. of Tennessee*, 23 F.App'x 512, 515 (6th Cir. 2001); *see also Galloway v. Univ. of Tennessee*, No. 3:06-cv-00461, 2007 WL 2263103, at *1-2 (E.D. Tenn. Aug. 2. 2007) (the Eastern District of Tennessee "has repeatedly held that [UT] is an arm and alter ego of the State of Tennessee and, as such, is entitled to the State's Eleventh Amendment immunity.") The court thus finds that there is no need to further analyze the nature of UT's contacts with the Middle District of Tennessee – or to reach the parties detailed allegations and arguments about the significance (or lack thereof) of UT's satellite campuses within the Middle District – in order to find that venue is proper here. As an arm of the state, UT is a corporation that is necessarily at home everywhere in Tennessee. *See Daimler AG v. Bauman*, 134 S.Ct. 746, 749 (2014) (in order to establish jurisdiction, "the proper inquiry . . . is whether a foreign corporation's affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum state."(internal citations omitted)). Indeed, it would be an absurd result to find that an arm of the State of Tennessee, even one that is also a corporation, is not at home in every district of the State, and, further, it would be unfair to allow UT to disavow its residency throughout the entire State of Tennessee, after having taken advantage of its arm-of-state status to claim sovereign immunity and avoid liability in numerous previous lawsuits.[10] *See, e.g., Galloway*, 2007 WL 2263103, at

---

[10] UT cites two cases for the proposition that a public corporation should still be treated as a corporation for venue purposes and, therefore, subject to a full analysis of its contacts with the district (Docket No. 30, p.7). However, these cases are inapposite, in that neither speaks specifically to a public corporation that is also an arm of a state seeking to avoid venue in any

*1-2. UT has effectively shown that it is both an arm of the state and a corporation, but it cannot successfully argue that it is possible to be an arm of the state that does not reside everywhere in the state (and most certainly in the state capital) for purposes of venue.

Accordingly, the court finds that venue is proper in the Middle District of Tennessee, and the court will not dismiss this action for improper venue.

## B. Motion to Transfer Venue Under § 1404

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." With this statute, "Congress intended to give district courts the discretion to transfer cases on an individual basis by considering convenience and fairness." *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 537 (6th Cir. 2002). In ruling on a motion to transfer venue under § 1404(a), a district court should consider case-specific factors, such as "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n.1 (6th Cir. 2006) (quoting *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1136–37 (6th Cir. 1991)); *accord Kerobo*, 285 F.3d at 537. The Sixth Circuit has suggested that relevant factors to consider include: (1) the convenience of the parties and witnesses; (2) the accessibility of evidence; (3) the availability of process to make reluctant witnesses testify; (4) the costs of

---

district of that state. *See R.S. Mikesell Assocs. v. Grand River Dam Auth.*, 442 F. Supp. 229 (E.D. Ok. 1977); *Daniel v. American Bd. of Emergency Med.*, 988 F. Supp. 127, 273 (W.D.N.Y. 1997).

obtaining willing witnesses; (5) the practical problems of trying the case most expeditiously and inexpensively; and (6) the interests of justice. *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009).

The moving party bears the burden of establishing that these factors weigh in favor of transferring venue. *See, e.g.*, *Picker Int'l, Inc. v. Travelers Indem. Co.*, 35 F. Supp. 2d 570, 573 (N.D. Ohio 1998); *Blane v. Am. Inventors Corp.*, 934 F. Supp. 903, 907 (M.D. Tenn. 1996). Ordinarily, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Reese*, 574 F.3d at 320 (quoting *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984)). "When a given action has a limited connection with the forum and is not the plaintiff's residence, the plaintiff's choice is to be afforded less weight than would otherwise be the case." *Am. Guar. & Liab. Ins. Co. v. Crosby Trucking Serv., Inc.*, No. 3:13-cv-00147, 2013 WL 3878953, at *3 (M.D. Tenn. July 26, 2013) (citing *Lisenbee v. FedEx Corp.*, 579 F. Supp. 2d 993, 1007 (M.D. Tenn. 2008)). The weight given to the plaintiff's choice of forum is lessened even further where events giving rise to the lawsuit occurred outside the chosen forum. *Id.*

While three of the eight plaintiffs in this action reside in the Middle District of Tennessee, the remaining plaintiffs do not and, in fact, three reside in the Eastern District. The events giving rise to this lawsuit occurred primarily on or near UT Knoxville's campus in the Eastern District of Tennessee. The plaintiffs' choice of forum, therefore, is afforded less weight than it would ordinarily be given. This is not to say, however, that the plaintiffs' choice of forum is given *no* weight. The absence of a high level of deference to a plaintiff's choice of forum does not, on its own, defeat that choice, and UT still bears the burden of demonstrating that the private and public interest concerns outlined above weigh in favor of transfer. *See Ajose v. Interline*

*Brands, Inc.*, No. 3:14-cv-1707, 2015 WL 5773080, at *3 (M.D. Tenn. Sept. 30, 2015); *see also*

*Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 (6th Cir. 2006).  In fact, even the plaintiffs who

are located outside of the Middle District of Tennessee have provided justification for their

choice of forum here.  They have all declared that their inconvenience would be lessened by trial

in Nashville, due to the lower cost of airfare and the availability of lodging, and they have also

declared that it would be painful and distressing for them to return to Knoxville, where they

allege they were victimized.[11]

UT has failed to meet its burden of showing that the balance of the factors outlined by the

Sixth Circuit weighs in favor of transferring this case to the Eastern District of Tennessee.  While

the events giving rise to the action appear to have taken place primarily on or near UT's

Knoxville campus and evidence is likely located there, the court is not swayed that this factor

carries much weight in this age of technology.  UT's argument that a Knoxville jury could visit

the site of some of the incidents is, likewise, not persuasive.  It, indeed, would be unusual to

conduct a "jury view" in a case such as this and, should physical location of events become

important, videos and photographs, in all likelihood, would suffice.  UT's strongest argument in

---

[11] The plaintiffs also cite the messages from the Volquest.com website that are attached to the Smith Declaration to support their vague argument that "[t]he interests of justice and avoidance of prejudice in this case include the right of the Jane Doe sexual assault victims to avoid the risk of receiving an unfair jury trial."  (Docket No. 23, p. 24.)  The plaintiffs do not elaborate on their grounds for arguing that they would be unable to receive a fair trial in Knoxville but appear to suggest that the comments on the Volquest.com message board show that this would be the case. Because, as discussed below, the court has found that the defendants have not met their burden of overcoming the deference given to the plaintiff's choice of forum in this case, the court need not reach this argument.  The court finds, however, that this small volume of anonymous messages on a website, from people whose identity and location is unknown, is not sufficient to conclude that the plaintiffs would be unable to receive a fair trial in Knoxville, and the court does not rely on this factor in its analysis and decision to deny UT's request to transfer the action to the Eastern District of Tennessee.

favor of transfer is the number of prospective witnesses it has identified, both party and non-party witnesses, who reside in the Eastern District of Tennessee. To meet its burden on a motion to transfer venue, however, UT must show something more than that it is inconvenienced by trial in Nashville; it must show that its inconvenience, and other factors, significantly outweigh even the lessened deference afforded to the plaintiff's choice of forum in this action. *See Nollner v. S. Baptist Convention, Inc.*, No. 3:14-cv-1065, 2014 WL 3749522, at *7 (M.D. Tenn. July 30, 2014) ("Merely shifting the inconvenience from one party to another does not meet Defendant's burden; to succeed in a motion to transfer . . . the movant must show that the forum to which he desires to transfer the litigation is the more convenient one *vis a vis* the Plaintiff's initial choice." (internal quotation marks omitted) (quoting *B.E. Tech., LLC v. Facebook, Inc.*, 957 F. Supp. 2d 926, 930–31 (W.D. Tenn. 2013))).

While it would clearly be more convenient for UT employees and other third party witnesses located in Knoxville to litigate this action there, UT has not pointed to any evidence, aside from the distance between Knoxville and Nashville, to show that this inconvenience would be so significant as to tip the scales in favor of relocating this lawsuit. Indeed, there is no evidence in the record speaking to a particular burden of litigating this case in the Middle District of Tennessee for any of UT's witnesses. In fact, the only non-party witnesses who reside in the Eastern District of Tennessee for whom there is any direct evidence in the record about the burden to them of litigating in Middle District of Tennessee – W. Timothy Rogers, Jenny Wright, and Drae Bowles – have all stated that they would *not* be inconvenienced by participating in a trial held in Nashville. Moreover, the plaintiffs have also pointed to a number of witnesses located in the Middle District, who would be equally inconvenienced by transferring the trial to Knoxville. The record does not provide sufficient evidence to show that any of these

prospective witnesses is less likely than any others to be necessary participants in this action. Also, there are other prospective witnesses, of both parties, who reside out of state and may be equally inconvenienced by trial in either the Middle District or the Eastern District of Tennessee.[12] UT has argued that more *key* witnesses are located in the Eastern District, referring apparently to individuals who witnessed the underlying events and who are responsible for setting policies at UT's Knoxville campus, while many of the plaintiffs' non-party witnesses who reside in the Middle District of Tennessee will testify as to damages. The court notes, however, that some of the plaintiffs' non-party witnesses will testify as to the assaults on the plaintiffs and other prior sexual assaults at UT Knoxville. Further, UT has not argued that any of the witnesses named by the plaintiffs are immaterial and, at this point in the case, the court is not a position to make a determination as to which witnesses are going to ultimately be most critical to this matter.

More importantly, again, UT has not pointed to any evidence that any of its witnesses – key witnesses or otherwise – would be substantially burdened by a trial in Nashville or be outside of the court's subpoena power so as to outweigh the deference given to the plaintiff's choice of forum. It is only three hours by car between the Nashville courthouse and the Knoxville courthouse, and they are located within the same state. Under Rule 45, witnesses who are officers of UT will be automatically subject to the court's subpoena power, and many of the other witnesses located in Knoxville will be subject to the court's subpoena power as well, absent a showing that they would incur a substantial expense. (*See* Fed. R. Civ. P. 45(c)(1)(B)

---

[12] The equality of inconvenience is somewhat questionable, however, given, as stated by some witnesses and as clearly true, that airline flights into Nashville are much more plenteous and economical than they are into Knoxville.

("A subpoena may command a person to attend a trial, hearing, or deposition . . . within the state where the person resides, is employed, or regularly transacts business in person, if the person is a party or a party's officer; or is commanded to attend a trial and would not incur substantial expense.")

Finally, UT argues that the interests of justice are best served by transferring this case to Knoxville, citing 1) Wright & Miller for the proposition that justice is better served in the forum where the facts arose, because of the heightened interest of a local jury in deciding the matter and the general sense that transfer is appropriate where a case has its "center of gravity" in another venue; and 2) the likelihood that the action will be more promptly resolved in the Eastern District because of the delayed appointment to fill a judicial vacancy in the Middle District (quoting an article from the Tennessean that has referred to the Middle District as having a "judicial emergency"). (Docket No. 15, pp. 12-13.) The court finds, however, that, because UT is an arm of the state, and because the plaintiffs and witnesses are spread throughout Tennessee and beyond, it is not entirely clear that the center of gravity of this case is located in the Eastern District of Tennessee, regardless of the main events giving rise to this action having taken place at UT's Knoxville campus. Rather, the court finds that the entire state has an interest in the resolution of this case that has lodged serious allegations against the state's premier higher education institution. With respect to the allegations of a "judicial emergency" in the Middle District, the court notes that the plaintiffs have cited evidence from the Administrative Office of the Courts that the Eastern District of Tennessee actually has greater delays in resolving its cases, as of the most recently available data.[13] In the end, this factor will not alter the court's findings

---

[13] Moreover, in 2012 and 2013, the United States District Court for the Middle District of Tennessee was ranked among the most productive district courts in the nation in an ongoing

that UT has not met its burden of showing that any factors significantly outweigh the deference given to the plaintiffs' choice of forum.

For these reasons, the court will deny UT's request to transfer this action to the Eastern District of Tennessee at Knoxville.

## MOTION TO STRIKE PARAGRAPH 26

### I.    Facts And Procedural History

On February 23, 2016, while the original Complaint was still the operative pleading, UT filed a Motion to Strike Paragraph 21 of the original Complaint.  (Docket No. 20.)  Paragraph 21 of the Complaint states as follows:

> In 1996, (then) Jamie Whited, the first female associate trainer in UT's history, reported an incident to the Sexual Assault Crisis Center in Knoxville alleging that UT football player Peyton Manning had, in brief, "sat on her face" while she was assessing the extent of an injury. The incident was settled in 1997 for an undisclosed amount conditioned on the victim leaving her job at the University. *See* http://usatoday30.usatoday.com/sports/football/nfl/colts/2003-11-04-manning-suit_x.htm (*last visited* December 9, 2015).

On February 24, 2016, while this motion was pending, the plaintiffs filed the First Amended Complaint against UT (Docket No. 22).  The language contained in paragraph 21 of the Complaint, quoted above, can be found verbatim in paragraph 26 of the First Amended

---

study compiled from Administrative Office statistics by Judge William G. Young, of the United States District Court for the District of Massachusetts, while the Eastern District was not so ranked.  Hon. William G. Young, United States District Court, District of Massachusetts, Keynote: Mustering Holmes' Regiment, *in* 48 New Eng. L. Rev. 451, 465-67 (Appendix A) (Spring 2014).  While unpublished, the court has also obtained Judge Young's most recent study results from 2014 and 2015, which also identify the Middle District of Tennessee among the most productive district courts, while not ranking the Eastern District.  The study period ending September 30, 2015, which ranked the Middle District of Tennessee 18th in the nation, included nine months during which this court has operated with only three judges in the four active judge positions.

Complaint. Paragraph 26 of the First Amended Complaint, however, adds the following

additional language:

> Ms. Whited reported this incident to Mike Rollo, then the Head Trainer at UTK.
> Mr. Rollo engaged in an effort to "cover up" the incident by inventing a false
> narrative that the incident was merely a "mooning." Rollo also suggested
> blaming the incident on a black athlete instead of Manning. Following the
> incident, Ms. Whited sent numerous letters (to the President of the University as
> well as the Athletic Director) complaining of a hostile and discriminatory sexual
> environment.*[7]
>
> _____
> *[7] Evidence of prior incidents is relevant in a Title IX case. *Simpson v. Univ. of
> Colorado*, 500 F.3d 1170 (10th Cir. 2007). Students raped at University of
> Colorado in 2001 (when Gary Barnett was head football coach) were allowed to
> show the University of Colorado knew of prior sexual assaults from as far back as
> 1989 to show "that there had been no change in atmosphere" since the prior
> assaults had occurred "that would make such misconduct less likely in 2001."

On March 7, 2016, the plaintiffs filed a Response to UT's Motion to Strike Paragraph 21 of

the Complaint (Docket No. 25). While the Motion to Strike Paragraph 21 of the Complaint

(Docket No. 20) was technically rendered moot by the filing of the First Amended Complaint

(Docket No. 22), the plaintiffs have fully responded to the issues raised in that motion, including

by addressing how additional language that was added to Paragraph 26 of the First Amended

Complaint may impact the questions at issue. UT's March 9, 2016 Motion to Dismiss and

accompanying Memorandum renewed UT's motion to strike this language, incorporating by

reference its prior briefing on this issue. (Docket Nos. 31, 32.) UT has, therefore, had an

opportunity to respond to any arguments that specifically relate to the additional language in

Paragraph 26 of the First Amended Complaint (though UT has chosen to simply reference its

prior motion, without raising any new arguments). The court will, therefore, consider these

earlier filed briefs when determining the request to strike Paragraph 26 of the First Amended Complaint.[14]

## II. <u>Analysis</u>

Motions to strike are governed by Rule 12(f), which states that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  The Sixth Circuit has held that striking factual material from a pleading is a remedy to be used "sparingly by the courts" and, thus, only when the material to be stricken "has no possible relation to the controversy."  *Parlak v. U.S. Immigration and Customs Enforcement*, 2006 WL 3634385 *1 (6th Cir. Apr. 27, 2006) (quoting *Brown & Williamson Tobacco Corp. v. U.S.*, 201 F.2d 819, 822 (6th Cir. 1953).

UT has simply not shown – nor can it show – that paragraph 26 of the First Amended Complaint bears no possible relation to this action.  It is clear that the allegations in this paragraph could be used to demonstrate a history of reports to UT administration of sexual assault on the UT campus, which, in turn, could support the plaintiffs' allegations that UT's policies fostered a hostile sexual environment, even after UT was placed on notice.  These issues are central to the plaintiffs' theory of liability in this case.  UT's argument that a significant length of time has elapsed since the incident alleged in paragraph 26 does not, at this stage of the

---

[14] In their Response to the Motion to Strike Paragraph 21 of the Complaint, the plaintiffs argue that it was improper for UT to have filed a separate motion to strike, after having already filed a motion to dismiss with respect to the original Complaint in this action.  (Docket No. 25, p. 1 (citing Rule 12(g), which states that, "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."))  In light of the filing of the First Amended Complaint, this issue is no longer relevant, and it has also been resolved by UT's incorporating all of its Rule 12 arguments into the currently pending Motion to Dismiss the First Amended Complaint (Docket No. 31).

proceedings, provide a basis for the court to find that these allegations have no relevance to this action, particularly where discovery has not yet been conducted and the record has not been fully developed.  It is not dispositive that the plaintiffs were not on campus at the time of this incident and that the administration has also likely since changed.  While UT may ultimately wish to file a motion *in limine* to exclude evidence of these allegations from being presented at trial, it would be speculative for the court to make a final determination about relevance at this point in time, where there is clearly a relationship between the allegations and the claims.

While UT argues that the allegations in paragraph 26 are inflammatory and scandalous, the court does not find in its discretion, even if this is the case, that this is a sufficient basis to strike the paragraph, where it is otherwise potentially relevant to the case.  Indeed, this case has already been highly publicized, and much of the subject matter will continue to incite media attention that may cast many individuals in an unfavorable light.  This is not a reason, however, to strike potentially relevant allegations from the pleadings.  The court is also sensitive to the specific consequences of naming an individual who is already in the public eye – as paragraph 26 does – but finds that that is not a sufficient basis to treat those allegations differently than allegations involving any other person that are of similar potential relevance.

For these reasons, the court will deny UT's request to strike paragraph 26 of the First Amended Complaint.

## **CONCLUSION**

For the foregoing reasons, the court will deny in part UT's Motion to Dismiss, specifically denying its requests to dismiss this action for lack of venue, to transfer this action to the Eastern District of Tennessee, and to strike paragraph 26 of the First Amended Complaint. The court will dispose of the remainder of the motion, namely UT's requests to dismiss this case

for failure to state a claim and to strike other portions of the First Amended Complaint, in a separate memorandum decision.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge